## ORR v. COOLEDGE et al.

1. When, after a breach by one of the parties to an executory contract which he has partially performed, the other party thereto elects to treat it, not as rescinded, but as continuing to have full force and effect, it is the right of the former to receive such fruits of the contract as he may justly be entitled to by reason of his partial performance of the same, being accountable, however, for any loss or damage arising from his breach thereof.

2. A married woman is not, in this State, under any legal disability to enter into a contract whereby she obligates herself to render to a partnership services to be performed by her husband in the capacity of a traveling salesman.

3. Duplicity in pleading on the part of a plaintiff consists, not in asserting a right to and praying for relief inappropriate to the cause of action set forth in his petition, but in making therein equivocal statements with a view to getting the benefit of two or more inconsistent theories as to his right to recover, or in basing his complaint upon different versions with respect to the facts which gave rise thereto.

4. The petition filed in the present case set forth a cause of action, and was not, for any reason assigned in the demurrer by which it was assailed, fatally defective either in form or in substance.

Argued January 23, — Decided February 11, 1903.　Rehearing denied February 28, 1903.

Petition.　Before Judge Lumpkin.　Fulton superior court. May 6, 1902.

The petition was by Maud S. Orr against F. J. Cooledge, Greer Martin, and C. A. McDaniel. It alleged: " (1) That the defend-

ants are each and all residents of said county.    (2) That on or about the first day of October, 1898, petitioner, through her husband V. E. Orr, acting as her agent, and the defendants entered into a written agreement or contract of copartnership, for the purpose of conducting in the city of Atlanta, said county, the business of manufacturing and dealing in art glass and fancy glass of various kinds, for use in dwellings and other buildings, and in kindred matters.    (3) That by the terms of the agreement so entered into, petitioner and each of the defendants were to contribute to the capital of the business, on or before the first day of January, 1899, the sum of one thousand dollars each, with the privilege to each of contributing as much as three thousand dollars.    The said V. E. Orr, the husband of petitioner, on behalf of petitioner, was to contribute his services and skill to said business, and each of the defendants was to contribute his services and skill to said business. Neither of the partners was to draw any salary from said business, but was to look entirely to the profits of the same for his compensation, except that as said business contemplated traveling over a considerable territory in Georgia and the surrounding States and taking orders at various points in said territory, each of said parties who did the traveling as aforesaid was, under the agreement, to draw, from time to time, as much as ten per cent. of the gross amount of orders taken by him for sales ; such ten per cent. being the stipulated or agreed amount to cover his expenses for traveling over the country and obtaining the orders.    No division of the profits of the business was to be made except at the end of each year, from the beginning of the business, at which time, if any net profits had been earned, a dividend was to be declared and paid out to each of the partners in proportion to the amount of money put in by him or her.    The defendant F. J. Cooledge was to be the general manager of the business, without salary, as above set out ; Greer Martin was to be the bookkeeper of the business, without salary ; the defendant C. A. McDaniel and petitioner's husband, the said V. E. Orr, were to be the traveling salesmen or representatives of said business on the road, and were to get no salaries for their services, except, as above shown, they were to draw from time to time ten per cent. of the orders sent in by them, as stipulated or agreed expenses incurred by them in traveling and procuring orders.    As above indicated, the compensation of

each of the partners was to be his pro rata of the net profits at the end of the year, in proportion to the amount contributed by him or her to the capital of the business. Books of account and complete records of the transactions of the business were to be faithfully kept, and stock was to be taken at the close of each current year, in December, in order to arrive at the status and condition of the business. The books of account and records of the copartnership were to be open at all times to inspection by each of the partners, petitioner, as above stated, being represented by her husband V. E. Orr. (4) Petitioner shows that said copartnership began business immediately after the execution of the contract aforesaid, and that petitioner's husband, the said V. E. Orr, who is an experienced man in such business and had previously had a number of connections and relations with other concerns in the country doing a like business, and a large clientele or patronage in that line of business, turned in to the copartnership, at the commencement of its business, various orders which he had recently obtained for goods in their line, amounting in the aggregate to about twelve thousand dollars in value; that in addition to this he faithfully performed his duties as a member of said copartnership and traveled over a considerable territory from time to time, from the date of said copartnership, on or about the first of October, 1898, until the first day of January, 1900, or about that time; during which period of time he sent in to said copartnership orders aggregating in value about the sum of twelve thousand dollars additional to those turned in by him at the beginning of the business. During the month of January, 1900, he sent in orders amounting to about the value of five hundred dollars; after which his active relations with said business ceased, in the manner and for the reasons hereinafter set out.

(5) Petitioner shows that during the time that her husband on her behalf, as above stated, traveled for said business and procured orders for the same, he drew from said business, by way of expenses, in accordance with the agreement, about seven hundred dollars, although his actual expenses in obtaining orders aforesaid and in performing the work and service for said business above set out, amounted to the sum of twelve hundred or thirteen hundred dollars; that neither petitioner nor the said V. E. Orr has ever received from said business or said copartnership any money

whatsoever, or other thing of value, over and above the seven hundred dollars aforesaid, which was drawn by the said V. E. Orr on account of expenses. (6) Petitioner shows that, according to her information and belief, neither the said Martin nor the said McDaniel has ever paid into said business as much as one thousand dollars, according to the agreement, and that indeed they have paid very little into said business; the exact amounts of which petitioner is unable to state; that the said Cooledge, so petitioner is advised, advanced from time to time sufficient money to carry on the business, the actual amount needed for this purpose being very small, on account of the nature of the business. The amount paid by the said Cooledge into the said business petitioner is unable to state accurately, for want of information. (7) Petitioner shows that she was unable, on the first day of January, 1899, to pay into said business the amount of one thousand dollars, as agreed in said copartnership contract; that certain money arrangements which she had expected to effect, the nature and character of which were known to the defendants, failed to materialize or be consummated, and she was unable to contribute the money agreed upon; that on or about the first day of January, 1899, petitioner's husband, the said V. E. Orr, on her behalf, conferred with the defendants and advised them that the transaction out of which she expected to realize the money necessary to be contributed by her, under the agreement, had not been consummated, and that she could not make the payment. The said V. E. Orr then and there offered to withdraw from the business, on account of petitioner's inability to contribute her share of money to the same. The defendants, however, realizing that petitioner's husband was a valuable man in said business and controlled a considerable patronage, did not wish petitioner to withdraw from the business, and modified said copartnership contract as to her by extending for six months the time in which she was to make her contribution, and expressed their willingness to indulge her even further, in the event that at the end of six months she was not able to make the contribution contemplated. On the faith of this modified agreement, petitioner's husband continued to contribute his services and skill to said business, as above set out, until October, 1899. At various times during this period, when petitioner's husband would come into Atlanta from his travels on

behalf of said business, he conferred with the defendants or some of them about the situation of affairs, and made various efforts to induce them to assist him in raising the money on behalf of petitioner to be contributed to said business as agreed, but nothing in this particular was ever accomplished, the defendants in each instance insisting that the copartnership arrangement should remain of force and go on as it had been, and that petitioner's husband, the said V. E. Orr, should continue to render the services agreed upon, as he had been doing. The defendant Cooledge particularly made assurances to petitioner's husband that petitioner and her said husband would be fully protected, stating that he, petitioner's husband, ought not to feel afraid of being taken advantage of by the defendants. Assurances of this character were given by the defendants, notwithstanding that during the summer of 1899 petitioner's husband, the said V. E. Orr, wrote to the defendants from Birmingham, Alabama, that petitioner was still unable to get the money to put into the concern as agreed, and he was unwilling to work for the company as he had been without compensation. In this letter he proposed that he should be put upon a basis of employment, and that he should receive one half of the entire profits, as he was contributing to the concern the great bulk of the orders and business done by it. Or, he proposed to continue to send in a fair amount of business, using a fair proportion of his time in obtaining orders for other concerns doing similar business, and receive one half of the profits earned on the orders sent in by him to said business. At or about the same time he sent in an order from Gadsden, Alabama, on which there was a profit of six hundred dollars to the business. Immediately upon his return to Atlanta, he had a conference with the defendants about the matter, but they still insisted upon his going on with his work and devoting his time, skill, and influence to said business, and expressed an unwillingness for him to devote any of his time to procuring orders for any other concerns doing a like business.

(8) Petitioner shows that about October 1, 1899, petitioner's said husband called upon the defendants for a statement of the condition of the business, but the defendant F. J. Cooledge requested that the matter be postponed until January 1, 1900. On or about the first of January, 1900, petitioner's husband renewed his request

for such statement, but the same was not furnished to him; and although he has a number of times requested of the defendants a statement of said business and of the profits earned thereon and of a settlement with and on behalf of petitioner, he has never been able to procure any statement of said business, nor any information as to the earnings or profits of the same, nor has he ever been able to obtain a settlement of the same with defendants. Petitioner is advised and believes that from the beginning of said business, on or about the first of October, 1898, to January,1900, at which latter time petitioner was entirely excluded from said business, the said business earned a handsome net profit, and principally so because of the efforts of petitioner's husband, the said V. E. Orr, but the exact amount of said profits petitioner is unable to state. (9) Petitioner shows that in January, 1900, or about that time, the defendants, as above indicated, excluded petitioner and her husband, the said V. E. Orr, from any and all participation in the affairs of said business, and refused to let them or either of them examine or investigate the affairs of the same, refused them access to the books and records of the business, refused to make them any statements of the earnings or profits of the business, or to make any settlements with petitioner, or pay her husband on account of the services rendered to said business as above set out; but that since that time defendants have conducted said business on their own behalf and in their own interest, and without any consideration whatsoever of the rights of petitioner. (11) Petitioner shows that the net profits of said business during the period aforesaid, which should have come to petitioner by reason of the contract and facts above recited, were at least three thousand dollars, enough to have paid up petitioner's agreed contribution to the capital of said business and to have paid her in addition at least two thousand dollars; that on account of the exclusion of petitioner and her husband as her agent from said business, the entire amount earned by said business during the periods aforesaid, apportionable to petitioner's interest, is due to her with interest thereon from January, 1900; that petitioner was, during said period, regarded by all of the parties hereto as a partner in said business, and is entitled to her share of the profits as such, after making a due allowance to the defendants for their contributions in cash to the capital of said business; but that, whether this be true or not, petitioner is entitled in equity and law to the value

of the services of her said husband, rendered on her behalf, during the period aforesaid, the value of which petitioner alleges to have been the sum of three thousand dollars. Wherefore, the premises considered, petitioner prays, that process may issue directed to each and all of said defendants, requiring them to be and appear at the next term of this honorable court, to answer this petition; that an accounting may be had with the said defendants and the exact amount of the earnings of said business may be ascertained for the period above set out; and that a judgment may be rendered in petitioner's favor against said defendants for the sum of three thousand dollars, or such other sum as she may be entitled to under the facts. Petitioner waives discovery on the part of each and all of said defendants, and prays for such other and further relief as to the court may seem proper in the premises."

The petition was demurred to on the following grounds: (1) No legal or equitable cause of action is set out. (2) There is no equity therein, no reason for styling the same an equitable petition, and no ground in the allegations thereof for a prayer for general relief. (3) It does not plainly, fully, and distinctly set forth petitioner's ground of complaint, if any she has. (4) The petitioner does not set forth the cause of action in orderly and distinct numbered paragraphs as required by the Civil Code, § 4961. (5) For duplicity, because in the same petition petitioner seeks for an accounting of the affairs of a partnership and for a judgment against these defendants, alleged by her to have been in partnership with her, for the alleged value of her husband's services, claimed to have been rendered on her behalf during the time she alleges that her connection with or membership in the partnership was preserved by said services, and as a consideration for which preservation she alleges the services were rendered. (6) Defendants demur specially to the 1st and 2d paragraphs of the division of the petition numbered 11, upon the ground and for the reason set forth in the 5th ground of this demurrer. (7) A copy of the alleged written agreement mentioned in the 2d paragraph of the petition is not set out in or attached to the petition, and the petition does not purport to set forth the entire substance thereof. (8) The agreements mentioned in paragraph 7 appear from the allegations of the petition to have been without consideration. (9) A wife is not in law entitled to control the services of her

husband, or to contract for rendition of the same as consideration for an interest by her in a partnership. (10) Taking all the allegations of the petition together, it is not possible to tell whether it was the wife or the husband, or both, or neither, who was a member of the partnership.

The court sustained the demurrer, and the plaintiff excepted.

*Anderson, Anderson & Thomas,* for plaintiff, cited Civil Code, § 3989, and cases cited thereunder; 90 *Ga.* 756; 55 *Ga.* 407 (5); 35 *Ga.* 320; 7 Enc. Pl. & Pr. 237, 243-4.

*Hoke Smith & H. C.`Peeples,* for defendants, cited 115 *Ga.* 97, 101; 103 *Ga.* 539; Civil Code, § 4961; 95 *Ga.* 4, 5; 108 *Ga.* 37; 111 *Ga.* 814; 114 *Ga.* 592.

FISH, J. The error assigned in the bill of exceptions sued out in this case is that the trial judge improperly dismissed on demurrer the plaintiff's petition. The material portions of this petition, as well as the grounds of the demurrer filed thereto, are set forth in the official report.

1. The cause of action upon which the plaintiff relied for a recovery was, in brief, as follows: She entered into a copartnership with the defendants, agreeing on her part "to contribute to the capital of the business, on or before the first day of January, 1899, the sum of one thousand dollars," and to also contribute towards the success of the enterprise the services of her husband. Her interest as a partner in the proposed venture was to be equal to that of each of her copartners, to wit, a one-fourth interest, save in the event one or more of them should elect to acquire a greater proportionate interest by investing in the enterprise additional funds, as expressly provided for by the articles of copartnership. In that event her interest in, and right to share the profits of, the concern was to be measured by the ratio which the amount of cash she agreed to contribute should bear to the sum 'total of the amount contributed respectively by her copartners. She actually complied, in part, with her obligations in the premises by immediately putting her husband to work for the firm, and keeping him at work for it up to January 1, 1899. She was unable on that day to comply with her obligation to pay over to the firm $1,000 as agreed. Her copartners did not, however, elect to treat her failure to pay as a breach of contract, but agreed to a novation, whereby, in consideration of her continuing to furnish the valuable services of her

husband, her relation to the firm as a member thereof was still to subsist, and the time of payment of her cash contribution was to be extended for six months.   Indeed her copartners "expressed their willingness to indulge her even further, in the event that at the end of six months she was not able to make the contribution contemplated."   The husband continued to work.   At the expiration of this extension of time, the money due by her was not forthcoming; but the other members of the firm chose to waive any right they may have had to take advantage of her failure to pay by forcing her to retire from the partnership.   Some time " during the summer of 1899, petitioner's husband," apparently more in his own behalf than as the representative of his wife, "wrote to the defendants from Birmingham, Alabama, that petitioner was still unable to get the money to put into the concern as agreed, and he was unwilling to work for the company as he had been without compensation.   In this letter he proposed that he should be put upon a basis of employment," receiving from them for his services a portion of the profits of the enterprise.   The defendants declined to give countenance to this proposition on his part to quit the employment of his wife and hire himself to them, and "still insisted upon his going on with his work and devoting his time, skill, and influence to said business," as theretofore, agreeably to the contract entered into by and between themselves and the plaintiff. The result was that she was enabled to comply with her obligation to furnish to the firm the services of her husband, whom she kept at work for it up to January, 1900, when "petitioner was entirely excluded from said business."   The defendants refuse to account to her for her share of the profits thereof, or to come to any settlement with her.

It is to be observed that the payment by the plaintiff of her contribution of $1,000 was not, under the contract as originally framed or as subsequently modified, a condition precedent to her becoming a member of the partnership.   On the contrary, the partnership was formed and entered into active operations "about the first of October, 1898," the plaintiff immediately turning over to the firm, as her proportionate part of the assets upon which it was to commence business, the identical salesman whom she had agreed to at once invest in the enterprise.   By so doing, her status as a partner became fixed early in October, 1898.   Under the

agreement whereby the partnership was formed, she was not called upon to further contribute to its capital until January 1 of the following year, when she was to pay over to the firm $1,000 in cash.   By failing to do so, she on that day for the first time became in default.   If time was of the essence of the contract, the defendants might have exercised their right to then rescind it, because of her breach thereof, accounting to her for her share of such profits, if any, as had up to that time been realized.   They did not, however, elect to treat the contract as rescinded, but chose to regard it as still subsisting, retaining and using the salesman she had furnished to the firm, and holding her to her obligation to pay to it her cash contribution of $1,000.   Doubtless it is true there was no consideration moving to them for their agreement to extend the time of payment of this sum for six months; but it is equally true that she was not released from her obligation to pay that amount, as per her original undertaking.   In other words, she was not only permitted to retain her status as a member of the firm, but was granted indulgence for which there was no consideration.   She had partially performed an executory contract, and was, on the date last mentioned, as much a member of the firm as any of the defendants.   Though she made default in the payment of the $1,000, her status as a partner could not be affected save by an election on their part to treat that contract as rescinded.   They could not so treat it and at the same time hold her to her obligation to fully perform it by paying to the firm in cash that amount.   By electing to regard the contract as still binding on all parties thereto, the defendants placed the plaintiff in the situation of a debtor liable to suit as upon a demand past due and unpaid.   If for any reason they deemed it inexpedient to attempt by legal process to enforce this demand, it was their right to insist that her share of the profits of the business be applied to the satisfaction of her indebtedness, until it became fully discharged.   They could not, however, successfully maintain the position that, while bound to comply with the obligations she had as a partner assumed, she had no right as such to share in the profits.   Nor, having once made their election to hold her to the contract, could the defendants thereafter claim any right to treat the contract as rescinded because of her failure to pay such demand, and force her retirement as a member of the partnership.   In January, 1900, they undertook to exclude

her from further participation in the fruits or labors of the enterprise. She then ceased to be a partner, not because they had the right to terminate her connection with the firm, but solely by reason of her election to treat the partnership as having been dissolved by their action in the premises. They now hold against her a claim arising out of her failure to pay her cash contribution of $1,000. She has against them a claim based on her undoubted right, as a partner, to share in the profits realized from the business up to the time her connection with the firm was severed. There can and should be had an accounting and settlement between the plaintiff and the defendants.

2. We quite agree with counsel for the defendants in error that "a wife is not, in law, entitled to control the services of her husband." Not being his legal custodian, she can not, of course, by a contract to which he is not a party and to which he does not assent, apprentice him to another. But it by no means follows that, in this State, a married woman is under any legal disability to enter into a contract whereby, "as consideration for an interest by her in a partnership," she obligates herself to render to the firm services to be performed by her own or another's husband, in the capacity of a commercial drummer. It does not appear, as in the case of *Pitts* v. *Allen*, 72 *Ga.* 69, that the parties to the contract contemplated a violation of the constitution by stipulating for and bringing about a condition of peonage affecting a third person of full age. Presumably, such "involuntary servitude" as the plaintiff's husband was subjected to grew wholly out of the marital relation existing between himself and her, and in no way out of the contract to which she and the defendants were parties. As they received the benefit of the services performed by her husband in her behalf, they are in law accountable therefor, unless they can show that the agreement entered into is, as being contrary to public policy, or for some equally good reason, void and unenforceable.

3. There is clearly no merit in those grounds of the demurrer wherein the plaintiff's petition is attacked for duplicity in pleading. "A declaration is duplicitous when it contains in the same count more than one fact, or set of facts, for the recovery of a single demand, any one of which would justify the recovery." 7 Enc. Pl. & Pr. 237. The plaintiff relies for a recovery upon a sin-

gle " set of facts." She bases her cause of action upon one, and but one, theory, viz., that the defendants are liable to account to her, as a partner, for her share of the profits of a business enterprise, realized up to the time her connection with the partnership was severed. She could not, of course, also introduce into her petition and rely on the inconsistent theory, supported by the allegation of a different " set of facts," that she made a contract with the firm by the terms of which she was, instead of looking to the profits of the business for compensation, to receive the value of the services performed by her husband in her behalf, irrespective of whether any profits were or were not realized out of the business venture. *Pitts* v. *Smith,* 108 *Ga.* 37; *Seifert* v. *Sheppard,* 111 *Ga.* 814. True, in the 11th paragraph of her petition she says, in connection with the allegation that up to January, 1900, she was regarded by the defendants " as a partner in said business," (1) she " is entitled to her share of the profits as such;" and (2) if this be not true, she " is entitled in equity and law to the value of the services of her said husband, rendered on her behalf." This, however, amounted to no more than an assertion on the part of the pleader of a bare conclusion with regard to the measure of the recovery in money the plaintiff was entitled to, in view of her interest, as a partner, in the profits of the enterprise. *St. John* v. *Leyden,* 111 *Ga.* 155. An allegation with respect to, or a prayer for, alternative relief or relief to which the plaintiff is not entitled, if based upon a consistent statement of a single " set of facts," can not properly be made the subject-matter of a charge of " duplicitous " pleading.

It may have been somewhat inconsistent to assert that the plaintiff's recovery was to be measured by the value of the services performed by her husband, when, by the very terms of the contract set up, she could not possibly have hoped to receive any compensation whatever for such services save in the event the venture proved a success, and then only by way of participation in such profits as were actually realized. But, if so, the defendants should, by special demurrer, have directed their objections to any such apportionment as the plaintiff's share in the profits of the enterprise. As no such point was made, we make no direct ruling thereon. We do, however, mean to be understood as holding that a distinction is to be drawn between mere useless pleading and that which may appropriately be styled duplicitous.

4. The contention set forth in the last ground of the demurrer was, that, "taking all the allegations of the petition together, it is not possible to tell whether it was the wife, or the husband, or both, or neither, who was a member of the partnership." There does occur, in the 4th paragraph of the petition, the assertion that "he faithfully performed his duties as a member of said copartnership," etc. But had this really trifling incongruity in her pleadings been, as it was not, specially pointed out by the defendants, it could readily have been cured by appropriate amendment. The pleader certainly made a bona fide effort to "set forth the cause of action in orderly and distinct numbered paragraphs, as required by" the Civil Code, § 4961, and the result of this effort should, we think, be regarded as a substantial compliance with the provisions of that section. If literal compliance therewith was not also attained, in point of fact or in the opinion of counsel for the defense, special attention should have been called to the precise spots at which the defendants desired the plaintiff to dissect and add additional numbers to the allegations of her petition. That it was inaccurately styled an "equitable petition," and contained a useless prayer for general relief, afforded no reason for dismissing it on demurrer, if (as we have no hesitation in holding is true) it plainly and fully disclosed a state of facts entitling her to the special relief sought. *Malone* v. *Robinson*, 77 *Ga.* 719. Nor was it necessary to attach "a copy of the alleged written agreement mentioned in the 2d paragraph of the petition," or with more particularity to "set forth the entire substance thereof."

*Judgment reversed. By five Justices.*