### 41677. STRAUSS et al. v. THE STATE.

DEEN, Judge. Strauss and others were charged in a five-count indictment with violations of the Georgia Securities Act (Ga. L. 1957, p. 134 et seq.) by defrauding various named persons through the sale of bogus money orders, particularly by a violation of *Code Ann.* § 97-112 (b) which makes it unlawful in security transactions "to employ any device, scheme, or artifice to defraud or to engage in any act, practice, transaction, or course of business which operates or would operate as a fraud or deceit upon the purchaser or seller." Briefly, each count sets out a money order purchased by a named person from one of three corporations controlled by the defendants which money order was paid for by the purchaser, and payment of which was refused. Beginning on September 3, 1963, the defendants conspired to defraud such purchasers and the general public by offering for sale "purportedly genuine and negotiable money orders, which in truth and fact were worthless, for a valuable consideration; by diverting and misapplying money derived from the sale of said securities to the general public to uses beneficial to said accused other than the ultimate payment of said money orders; by operating a check kiting scheme between bank accounts in said Crown Savings Bank and in other banking and financial institutions." The transactions are set out in detail. The conspirators allegedly falsely represented to merchants that they had posted the $100,000 bond required by the State of Georgia. The money orders were drawn on Crown Savings Bank and the defendant Jackson falsified the records of said bank, overstating both the control account and the various accounts of the three corporations. Merchants, acting as innocent agents, were induced by stated false representations to sell the bogus money orders to the public, they receiving a commission for this service. Receipts were ostensibly deposited in a named list of banks, but the accused "continually and on a daily basis transferred large credits between said accounts and banks by checks and debit memoranda to cover up and conceal large overdrafts in the over-all accounts of said three companies, thereby operating a 'check-kite' in that the gross face value of all money orders sold which were still outstanding and in the process of being presented to said Crown Savings Bank for payment far exceeded the total funds and

credits of said money order companies in all of aforesaid accounts, as accused well knew. Said 'check-kite' was operated by said accused to enable money orders drawn upon said Crown Savings. Bank to be paid upon presentation to that bank, and thus enable said accused to continue to sell money orders in great volume through its innocent agents aforesaid, and to collect the money derived from such sales, even though there was never enough money or credits in any and all accounts of said money order companies with which to pay the total amount of money orders sold, outstanding and as yet unpresented for payment, as accused well knew." Details of the check transactions and dates follow, which show a continuous overdraft of over $100,000 in the First National Bank, Columbus, between July 2 and July 20, 1964; a like overdraft of over $30,000 in the Liberty National Bank & Trust Co. of Savannah between July 6 and July 22, and false credits posted in Crown Savings Bank in the "Citizens Bank, Stockbridge, Georgia" control account of the three companies in excess of $205,000. Details of fraudulent transfers of funds from the control account to accounts of other corporations owned by the defendant, for the purpose of misapplying and diverting funds and credits on August 14, 1964, are detailed. Between September 4 and September 9 the defendants collected $118,750.31 from agents selling the money orders with knowledge that Crown Savings Bank was refusing payment on all such orders "as having been drawn against uncollected funds" knowing the bank had been closed by order of the Virginia Commissioners of Banking, and "wilfully and unlawfully failed and refused to refund said money to the persons who had paid same as the purchase price of money orders . . . whereby the purchasers were defrauded and suffered pecuniary losses." General and special demurrers to the indictment were overruled and the defendants appealed. *Held:*

1. *Code Ann.* § 97-102 (i) defines a security as "any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of indebtedness, investment certificate, certificate of interest or participation, certificate of interest in oil, gas or other mineral rights, collateral trust certificate, pre-organization certificate or subscription, transferable share, investment contract, voting-trust certificate or beneficial interest in title to property, profits or earnings, or any other instrument commonly known as a security." Negotiable

instruments, while they are securities, are exempt from the provisions of the Act. *Code Ann.* § 97-106. An ordinary contract for personal services is not a security. *Dame v. Lee,* 180 Ga. 315 (178 SE 752). However, a guaranty contract is an "evidence of indebtedness" which is by definition a security. *Goldstein v. Ipswich Hosiery Co.,* 104 Ga. App. 500 (16) (122 SE2d 339). In *Littlefield & Bro. v. Clary,* 66 Ga. 322, a mortgage was held to be a security for debt rather than a mere evidence of indebtedness because it was a lien binding particular property. The same distinction obtains in *McIntire v. Garmany,* 8 Ga. App. 802 (3) (70 SE 198). The money orders in question here are not negotiable instruments under *Code* § 109A-3—104 because, while they meet the other requirements of the section, they are not, as required by subsection (1) (d) payable to order or bearer as money orders usually are. On the other hand, they have prominently inscribed the words "Know Your Endorser" which, together with the general form of the instrument suggest to the purchaser that they are negotiable in the same manner as a check. Although not a negotiable instrument, each of the instruments is certainly an evidence of indebtedness as above defined, and those demurrers attacking the various counts of the indictment on the ground that the paper involved was not a security within the meaning of the Act are not well taken.

2. There are no crimes in Georgia except those made so by statute. There is no such crime as *conspiracy per se,* but the crime is the act prohibited by statute, and, if it results from a corrupt agreement, each co-conspirator is liable for the acts of all. *Kilpatrick v. State,* 72 Ga. App. 669 (34 SE2d 719). The third ground of special demurrer which charges that the indictment is duplicitous because it "charges the same offense by attempting to allege each separate money order as an individual count" is defective for the reason that duplicity means, not alleging the same transaction in varying ways by means of separate counts, but in alleging more than one theory or version of the transaction in a single count. *Orr v. Cooledge,* 117 Ga. 195 (3) (43 SE 527). A conspiracy to defraud may result in a number of people suffering loss, and each loss is a separate crime for which punishment may be exacted. In *Curtis v. State,* 102 Ga. App. 790 (118 SE2d 264) 36 separate violations of the same Security Act were charged and the court held that the sentences on conviction might be

imposed cumulatively. In *Mitchell v. State*, 89 Ga. App. 80 (78 SE2d 563), two defendants were charged in 47 counts of automobile theft, all pursuant to the same plan or scheme. See also *Bulfin v. State*, 38 Ga. App. 358 (144 SE 15); *York v. State*, 42 Ga. App. 453 (156 SE 733). Even if the indictment did charge the same offense in separate counts, the remedy would not be by demurrer for duplicity but by a motion to elect on the part of the State on which count it wished to rely for conviction. *Lascelles v. State*, 90 Ga. 347 (4) (16 SE 945); *Pippin v. State*, 205 Ga. 316 (5) (53 SE2d 482). The separate counts of this indictment appear to charge separate offenses, each of them the defrauding of a named person in a given amount through the victim's purchase of a bogus money order, which is a proper method of pleading.

3. It is further contended that the various counts of the petition do not negative the possibility that there were sufficient funds in the Crown Savings Bank to the credit of the money order company involved in each of the sales. Each count of the indictment alleges that the purchaser involved therein was actually defrauded and did suffer a pecuniary loss; that the payee did not receive payment of money in any amount and the defendants did not refund the money to the purchaser but retained it for their own use. And, as to funds in the control account in the bank, it is alleged that the bank was, at a slightly later time, refusing payment on all such orders as having been drawn against uncollected funds; the methods of operation by conversion of funds collected, large overdrafts covered by kited checks and concealment through falsification of accounts adequately establishes as against demurrer that while some money orders may have been properly cashed, others, including the ones involved here, were unpaid due to the fraud of the defendants.

4. The remaining special demurrers, not being argued, are treated as abandoned.

The indictment was not defective for any reason assigned.

*Judgment affirmed. Nichols, P. J., and Hall, J., concur.*

ARGUED JANUARY 5, 1966—DECIDED JANUARY 18, 1966— REHEARING DENIED FEBRUARY 4 1966

*Wesley R. Asinof, Charles R. Smith, Robert Carpenter,* for appellants.

*Lewis R. Slaton, Solicitor General, J. Robert Sparks, J. Walter LeCraw,* for appellee.