24764. STRAUSS v. STYNCHCOMBE, Sheriff.

ARGUED SEPTEMBER 12, 1968—DECIDED DECEMBER 5, 1968—
REHEARING DENIED DECEMBER 19, 1968.

*Harold Karp, Cunningham & Weinstein, Arthur Cunningham, Philip Weinstein,* for appellant.

*Lewis R. Slaton, Solicitor General, J. Walter LeCraw, J. Robert Sparks, Carter Goode,* for appellee.

FRANKUM, Justice. The appeal here is from the judgment and order of the Superior Court of Fulton County in a habeas

corpus proceeding in which the court refused to discharge the applicant and remanded him to the custody of the defendant sheriff. Strauss and five other named defendants were jointly indicted by the grand jury of Fulton County on five counts charging violations of Section 11 of the Georgia Securities Act (Ga. L. 1957, pp. 134, 159; *Code Ann.* § 97-112). Strauss elected to sever and upon his trial was convicted on all counts and sentenced to three years' imprisonment and to pay a fine of $5,000 on each count, said prison sentences to run consecutively. Strauss appealed his conviction to the Court of Appeals, which court dismissed his appeal for failure to file the transcript of the evidence in the time required by law. See *Strauss v. State,* 116 Ga. App. 154 (156 SE2d 543). This court denied his application for certiorari on September 7, 1967. Apparently no attempt was made to have the judgment of this court denying his application for certiorari reviewed by the Supreme Court of the United States, although, as we shall see, a number of the enumerations of error contained in his appeal to the Court of Appeals sought to raise questions respecting alleged violations of his rights as guaranteed by the United States Constitution.

While his appeal was still pending, that is before this court had denied his application for certiorari, Strauss sought his discharge in a habeas corpus proceeding in the Superior Court of Fulton County on the sole ground that the grand jury which had indicted him was unconstitutionally composed in that Negro citizens were systematiclly excluded from it. That application was denied and he appealed that judgment to this court, where it was affirmed. See *Strauss v. Grimes,* 223 Ga. 834 (158 SE2d 404). Thereafter appellant filed the present application for habeas corpus, and upon the trial thereof the Judge of the Superior Court of Fulton County entered an order and judgment refusing to discharge him and remanding him to the custody of the appellee. That judgment is the judgment appealed from here. Appellant, in his brief, has reduced his nineteen grounds of enumerated error to seven issues which he has argued and discussed in his brief before this court. Appellee has substantially agreed with appellant as to the issues and has responded to appellant's argument by answering appellant's contentions

with respect to those seven issues. We shall accordingly treat the case on the same basis and decide the issues argued by appellant and appellee in their respective briefs. The nature of those issues will sufficiently appear from the opinion.

■ By the Act approved April 18, 1967 (Ga. L. 1967, p. 835 et seq.) the General Assembly amended Title 50 of the Code by striking therefrom § 50-101 and substituting a new § 50-101, and by adding at the end of Chapter 50-1, a new section to be known as § 50-127. As amended, and insofar as is pertinent here, § 50-101 (c) provides: "Any person restrained of his liberty as a result of a sentence imposed by any state court of record may sue out a writ of habeas corpus to inquire into the legality of such restraint." Ga. L. 1967, pp. 835, 836. Section 50-127 established a new and exclusive procedure for suing out writs of habeas corpus by or on behalf of persons restrained of their liberty by virtue of a sentence imposed against them by a state court of record. Under this section jurisdiction to hear petitions for habeas corpus is vested exclusively in the superior court of the county wherein the petitioner is being detained. The portion of this section which is material to a consideration of the appellant's first issue is contained in the first subparagraph of the section as follows: "(1) Grounds for Writ.—Any person imprisoned by virtue of a sentence imposed by a state court of record who asserts that in the proceedings which resulted is his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Georgia, or the laws of the State of Georgia, may institute a proceeding under this section. Rights conferred or secured by the Constitution of the United States shall not be deemed to have been waived unless it is shown that there was an intentional relinquishment or abandonment of a known right or privilege which relinquishment or abandonment was participated in by the party and was done voluntarily, knowingly and intelligently." Ga. L. 1967, pp. 835, 836. The provisions of this Act conferred upon the trial court and upon this court jurisdiction to entertain the questions presented by the appellant's application for habeas corpus, and we therefore pass immediately to a consideration of the merits of the appellant's

other contentions. This disposes of the first two of his contentions.

■ The appellant contends in his third issue that his conviction was procured by the use of evidence obtained through an illegal search and seizure. In this connection he contends that there was an insufficient showing of probable cause in the affidavits made to obtain the two search warrants involved, and that the warrants were general warrants under which the solicitor general embarked upon a general exploratory search. He contends that this was in violation of the Fourth Amendment of the U. S. Constitution and of Article I, Sec. I, Paragraph XVI of the Georgia Constitution prohibiting unreasonable searches and seizures and forbidding the issuance of search warrants except upon probable cause and requiring that such warrants particularly describe the place or places to be searched and the persons or things to be seized. Finally, he contends in this connection that his personal papers, rather than the corporate papers described in the affidavits and warrants, were seized, and that there was no authority under Georgia law at the time the searches and seizures here in question were instituted to search and seize things of the nature seized in this case.

We have carefully examined appellant's contentions in this regard and find no merit in any of them. The initial search warrant in question was issued on September 1, 1964, pursuant to an affidavit made by an individual, who it appears was an investigator in the office of the Fulton County Solicitor General. The affidavit, which is slightly more than three legal pages in length, recites a number of *facts* of which the affiant says he has knowledge, either directly or through persons whom he knows to be reliable informants. In summary, these facts show that a number of money orders issued by three named money order companies and drawn on the Crown Savings Bank at Newport News, Virginia, have been returned to the purchasers unpaid on account of insufficient funds on deposit therein; that due to the dealings of Crown Savings Bank with the money order companies and other named companies whose offices are located at the premises to be searched the bank has been closed by the State Banking Commission of Virginia and its affairs taken over

by the Federal Deposit Insurance Corporation; that the aforesaid money order companies and other corporations named in the affidavit "are in the hands of" three named persons, one of them being the defendant here and "that all of said persons are known to affiant by reputation, and all of them have a bad reputation for fraudulent financial dealings," and that because of those facts and others stated in the affidavit affiant has probable cause to believe that the crimes of embezzlement, larceny after trust, and cheating and swindling have been committed by the three named individuals. The affidavit then asks for a search warrant to search specified premises for the "records of said corporation and said companies, consisting of all the minutes of meetings of the incorporators and/or owners, stockholders, officers, and directors, and other records reflecting ownership of stock, all ledgers, books of account, all records of bank deposits and withdrawals, all records pertaining to issuance of money orders by said corporation and said companies, its officers, agents and employees and Crown Savings Bank of Newport News, Virginia, and said Citizens Bank of Stockbridge, Henry County, Georgia, blank unissued money order forms and check writing equipment, including carbon copies of letters forwarded to other banks." The warrant issued on the same day directed the Marshal of the Civil Court of Fulton County to enter the described premises and to make a diligent search for the "various documents, records, papers, correspondence, blank unissued money orders, books and records of each of the companies and corporations listed together with check writing equipment named in the foregoing affidavit," and if he should find them, to bring them before the magistrate issuing the warrant or some other judicial officer to be dealt with as the law directs.

As we understand the appellant's contentions with respect to the sufficiency of the allegations of fact set forth in the affidavits to obtain the warrants (and, while there is some difference in the two affidavits they are substantially alike, and what is said as to one would also apply to the other) he chiefly contends that the affiant showed by the very language of his affidavits that much of the information which he relied upon

as showing probable cause was information not within his personal knowledge but was information furnished to him by others and that such information was therefore a mere conclusion on his part insufficient to authorize a finding of probable cause. In this regard we think the complete answer to the appellant's contentions is set forth in the opinion of the Court of Appeals in the case of *Peters v. State,* 114 Ga. App. 595, 596 (152 SE2d 647), together with the authorities there quoted and cited: " 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. They are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.' Brinegar v. United States, 338 U. S. 160, 175 (69 SC 1302, 93 LE 1879). There is also a great 'difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search.' Draper v. United States, 358 U. S. 307, 311-312 (79 SC 329, 3 LE2d 327). As Judge Learned Hand said in United States v. Heitner, 149 F2d 105, 106 (CA 2d Cir.): 'It is well settled that an arrest may be made upon hearsay evidence; and indeed, the "reasonable cause" necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties.' " We have no hesitancy in adopting and, indeed, reiterating these principles in connection with appellant's contentions respecting the showing of probable cause in this case. The affiant here showed ample facts to authorize the issuing magistrate to conclude that there was probable cause to believe that a crime of the nature set forth in the affidavits had been committed and that evidence of that crime would be produced by a search of the premises described in the affidavits. The fact that much of the affiant's information was derived from informants would not vitiate the warrant.

With respect to the alleged general nature of the warrants and of the searches conducted thereunder appellant relies chiefly upon the cases of Marcus v. Search Warrant, 367 U. S. 717 (81 SC 1708, 6 LE2d 1127), and Stanford v. Texas, 379 U. S. 476

(85 SC 506, 13 LE2d 431). Neither of those cases requires a finding that the warrant in this case was void. The Marcus case involved a search for and seizure of allegedly pornographic and obscene literature, and in the Stanford case documents were sought which would demonstrate that the defendant was a Communist subject to registration under a Texas law to that effect. The distinction between those cases and this case, which to our mind is most pertinent, is that in those cases the warrants left to the seizing officer's own judgment and opinion what books, magazines and papers were subject to seizure under the warrant and this decision in each case was largely dependent upon a matter of opinion. Here, the things to be seized were particularly described records of named corporations and whether a particular document constituted one of the described records of the named corporations was not a matter of opinion but a matter of fact which could be ascertained by inspecting such document. We do not believe that it was the intention of the Supreme Court of the United States in either the Marcus or the Stanford case to lay down any such rule as contended for by appellant that the searching and seizing officer be left no room to make a judgment as to what particular documents or things are subject to seizure under the warrant which he is executing. It is difficult to imagine that a case could arise where an officer executing a valid search warrant would not at some stage in the matter be required in the very nature of things to exercise his judgment as to what thing or things or person or persons were to be seized under the warrant. If, for example, the warrant calls for the search and seizure of intoxicating liquors at a described location the executing officer may be required to determine as a matter of fact which of several different containers found on the premises searched contain intoxicating liquors or which contain other beverages of a nonintoxicating character. In the very nature of things, he cannot be relieved of making this determination, and we conclude that so long as the determination which he is required to make is a determination of a matter of fact as distinguished from a determination of a matter of opinion the warrant is valid.

The final contention which the appellant makes relates to the second search and seizure whereby certain documents were seized at the home of the defendants, some 20 days after the first warrant was issued and executed. On the occasion of that search and seizure which occurred on October 1, 1964, a search of the defendant's home produced a briefcase in the closet of the master bedroom which contained a number of sheets of paper which became State's Exhibits 108, 109, 110, 111, and 116. There was one of these sheets dated for each business day commencing in March, 1964, and ending on September 5, 1964. Each sheet purports to show the overdraft status of the various bank accounts of the three money order companies and other enterprises of the appellant in the Crown Savings Bank of Newport News, Va. These breakdowns purport to show for each of the money order corporations and for the other enterprises of the defendant the checks written in the five days preceding the date of each sheet, the previous day's overdraft, the transactions for the date subheaded "wire" and "checks," and the current overdraft balance of each account. Defendant contends that these were personal papers prepared by his accountant for his own personal information. We think these documents sufficiently show a connection with the scheme which the indictment charged the defendant with engaging in to defraud and that their logical connection therewith as shown upon the trial of the case was sufficient to authorize their seizure. No violation of the defendant's constitutional rights occurred in the seizure of these papers.

■ With respect to the fourth issue argued by appellant in his brief, the contention is made that the trial court committed error by instructing the jury that "the money orders described in the five counts of this indictment are securities within the meaning of the Georgia Securities Act." Appellant contends that this amounted to the direction of a verdict insofar as the issue of whether or not the money orders involved were securities under the terms of the Act. There is no merit in this contention. The defendants demurred to the indictment. Their general and special demurrers were overruled and they appealed to the Court of Appeals. That court, in reviewing the

judgment overruling the demurrers, held that the money orders involved, while not negotiable instruments, were certainly evidences of indebtedness as defined by the Act, and therefore were securities within the meaning of the Act. *Strauss v. State,* 113 Ga. App. 90, 92 (1) (147 SE2d 367). This court denied certiorari (113 Ga. App. 888), and that judgment thus became the law of the case. "The construction of a contract is a question of law for the court. Where any matter of fact is involved (as the proper reading of an obscurely written word), the jury should find the fact." *Code* § 20-701. No ambiguity or obscurely written word is involved in the money orders in this case, and under all the circumstances it was not error for the court to instruct the jury as complained of here.

■ Appellant next contends that the dismissal of his original appeal by the Court of Appeals of Georgia violated his right to procedural due process. We are here concerned only with asserted denials of constitutionally guaranteed rights. Since we have held in Division 1 that the appellant may assert in this habeas corpus proceeding any constitutional right which he might have asserted on his original appeal and without regard to whether he in fact sought to assert it or did not seek to assert it on his original appeal, it is unnecessary to decide whether the dismissal of his appeal denied him procedural due process.

■ Appellant was convicted on five separate counts charging him with violation of Section 11 (b) of the Georgia Securities Act (Ga. L. 1957, pp. 134, 159; *Code Ann.* § 97-112). This section makes it unlawful for any person, in connection with any transaction or transactions involving securities in this state, to employ any device, scheme, or artifice to defraud, or to engage in any act, practice, transaction or course of business which operates or would operate as a fraud or deceit upon the purchaser or seller of such securities. A fine of $5,000 and a sentence of three years' imprisonment to be served consecutively was imposed upon the appellant, as to each count. He contends that the gravamen of his offense, if any, was in the employment of a device, scheme or artifice to defraud or the engaging in any act, practice, transaction or course of business

which operates or would operate as a fraud or deceit upon the purchaser or seller of securities, and that since he employed only one scheme or device, or engaged in only one course of business that he committed only one offense and that the imposition of separate sentences to be served consecutively on each of five counts constituted the imposition of multiple sentences in violation of constitutional guarantees against double jeopardy. Each count of the indictment charges the accused with defrauding a separate and distinct person in a separate and distinct transaction of a stated amount of money. Each count therefore charges the commission of a separate and distinct offense which was clearly authorized under the provisions of clause (2) of paragraph (b) of the above cited Act, which clause makes it unlawful "to engage in any act, practice, transaction or course of business which operates or would operate as a fraud or deceit upon the purchaser" of such securities. See *Curtis v. State,* 102 Ga. App. 790 (118 SE2d 264), and *Strauss v. State,* 113 Ga. App. 90 (2) (147 SE2d 367). There is no merit in this contention of the appellant.

■ The final contention of appellant is that he was denied due process in that the solicitor general withheld from him certain documentary evidence of an exculpatory nature which had been seized under the search warrants in question and transported to a storage room in the Fulton County courthouse. He contends that either as a result of carelessness in the preservation of these records or through deliberate acts of the solicitor or others in his office, certain records which would have corroborated appellant's position on the trial of the case were lost or destroyed. With respect to this contention, the evidence in the record is in conflict. Whether or not appellant was denied access to documentary evidence which would have been beneficial to him on the trial of the case was a question of fact, and on the whole record before this court it cannot be said that the evidence contained in the record in this regard did not authorize the trial judge to conclude that there had been no denial of the appellant's constitutional rights as contended

*Judgment affirmed. All the Justices concur.*