Jeannette E. LEWIS, Plaintiff,

v.

Benjamin BOGIN et al., Defendants.

No. 67 Civ. 4055.

United States District Court,
S. D. New York.

Jan. 14, 1972.

Lawrence Milberg, New York City, for plaintiff.

Sullivan & Cromwell, New York City, for defendants; Roy H. Steyer, M. Blane Michael, DeWitt, Nast & Diskin, C. Coudert Nast, John R. Coughlin, Sabin, Bermant & Blau, Thomas R. Newman, New York City, of counsel.

LASKER, District Judge.

On June 6, 1967, Conde Nast Publications, Inc. (CN) was merged, subject to the provisions of § 904 of the New York Business Corporation Law, McKinney's Consol.Laws, c. 4, with Patriot Nast Publishing Co., Inc. (Patriot). CN was the surviving corporation and continues in business.[1] Prior to the merger Patriot was the owner of 87% of the issued and outstanding voting stock of CN. The stock of Patriot, in turn, was at the time of the merger owned 94% by defendant Samuel I. Newhouse (Newhouse) and his family. Alleging that, through Patriot, Newhouse controlled and dominated CN's board of directors, plaintiff has brought this derivative and class suit against the Newhouses, CN's board of directors, Goldman Sachs & Co., CN's financial advisor, and a partner of that firm.

The burden of the amended complaint is that prior to April 1967 the defendants other than Goldman Sachs "conceived the plan of utilizing and acquiring the assets of Conde Nast to further the interests of the Newhouse Newspaper Group [owned or controlled by Newhouse], and to purchase the stock, assets, business and goodwill of Conde Nast at a value far below the true, fair and reasonable value thereof, and to deprive the public shareholders of Conde Nast of the continued opportunity to participate in the ownership of Conde Nast's business and in the opportunity to share in the profits and assets, disclosed and undisclosed."

Plaintiff alleges a bifurcated scheme: First, to cause CN to purchase a 50% interest in Mobile News, Inc., with the purpose of depleting CN's assets so that its special and regular dividends would be passed, thereby assertedly depressing the market price of CN's stock; second, by means of a merger between CN and Patriot, attended by a proxy statement which contained material misrepresentations and omitted necessary material facts, to secure the stock of CN's minority and public shareholders, whether by purchase or appraisal, at a price less than its value.

It is claimed that the scheme (including the issuance of the proxy statement) constituted a violation of § 10(b) of the Securities Exchange Act of 1934 (the Act), § 14 of the Act, the Rules relating to each, and common law fiduciary obligations.

The relief sought is: that the merger be declared void; that the defendants

---

1. Plan of Merger, proxy material p. 28, Ex. A2, Affidavit of C. Coudert Nast on Defendants' Motion for Summary Judgment—Specific details of the Plan are discussed in the text below.

(other than Goldman Sachs [2]) be directed to reconstitute CN as it was prior to the merger; that the defendants other than CN be required to account to CN for their profits and the damages sustained by CN as a result of defendants' acts; and that the defendants pay the public shareholders of CN damages which reflect the true value of the assets allegedly wrongfully acquired by defendants through the merger.

Pretrial discovery has been completed.

Defendants move in the alternative, pursuant to Rules 12(b) (6), 12(c) and 56, Fed.R.Civ.P., for judgment dismissing the amended complaint for failure to state a claim, or judgment on the pleadings, or summary judgment. Plaintiff moves for summary judgment as to all issues except damage and for a declaration that the case is properly brought as a class action.

We find that on the material facts as to which there is no genuine issue the plaintiff has failed to establish damage to the corporation, to herself, or the class of minority stockholders as a result of the alleged misrepresentations in and omissions from the proxy statement. Accordingly, defendants' motion for summary judgment is granted as to those allegations. The motion for summary judgment of both parties as to the claims relating to the Mobile News purchase is denied, since genuine issues of fact remain as to the material question whether that transaction was improperly and fraudulently motivated. The plaintiff's motion for determination as a class action is granted as to the surviving claims.

## I.

Plaintiff asserts that the proxy statement issued as a prerequisite to the vote on the merger violated § 10(b) and § 14(a) of the Act in the following respects:

1) Failing to state that the magazine titles Vogue, Charm, Glamour and Bride's Magazine, owned by CN, were valuable property rights [3] in the promotion of which substantial sums had been invested;

2) Failing to state the number of shares which CN owned in Butterick Co., Inc. (Butterick), so that the shareholders could verify the market value of the stock, and failing to advise the stockholders of favorable information about the earnings of Butterick which the president of CN had secured in his capacity as a director of Butterick and which he had revealed to the defendants.

In the original complaint plaintiff alleged that defendants failed to disclose information in the proxy statement about an American Can Company proposal to acquire the Butterick stock owned by CN at a price greatly in excess of the value at which the stock was valued in the proxy statement. That claim is significantly omitted from the amended complaint—presumably on the basis of depositions of the defendants which demonstrated that the proposal was not made until after the merger vote and that the defendants had no knowledge of it before that date.

In order to understand the issues presented, the review of plaintiff's claims must be supplemented by a statement of certain undisputed salient facts.

The plan of merger was presented to the stockholders on June 6, 1967, and less than 1% of the outstanding shares voted against it. Plaintiff voted neither for nor against, nor did she file a dissent to the plan under New York law. .

Shortly after the merger was consummated, and two months before the filing of this suit, CN commenced an action in the New York State Supreme Court pursuant to § 623 of the Business Corporation Law to determine the "fair value" as

2. The cause of action asserted against Goldman Sachs is based solely on Goldman Sachs' participation in determining the amount to be paid under the merger plan to CN's public stockholders and in preparing the proxy material. No claim is made that Goldman Sachs was one of those who "conceived" the scheme.

3. The goodwill and intangible assets owned by CN were valued in the proxy material at $1.

of June 5, 1967 (the day before the merger) of the shares of its stock then owned by its dissenting public stockholders (the "Respondents" in that action). An appraiser was appointed to hear the matter and report to the Court. The hearings consumed 34 days. Three expert witnesses as to stock valuation testified for CN and eleven for the Respondents. The transcript of the hearings ran to 4594 pages, supplemented by 703 pages of depositions. On November 24, 1969, the appraiser submitted a 63 page report which found the value of CN stock to be $18.50 per share as of June 5, 1967—the precise amount which the plan of merger provided for payment to CN's public stockholders. The appraiser's report was confirmed by judgment of the New York Supreme Court on February 26, 1970.

The entire transcript of the hearings and the depositions of a number of the defendants (e. g., Samuel Newhouse, Patcevitch, Whitehead), as well as the appraiser's report and the judgment of the State Court have been submitted to this court and incorporated by reference in the affidavit of C. Coudert Nast in support of defendants' motions here. We have reviewed all of the material to which references have been made either by the defendants or the plaintiff, and our factual findings are based upon that detailed examination.

During the course of the hearings the appraiser was informed of all the material which plaintiff claims was improperly omitted from the proxy statement. For example, it is plaintiff's position in this action that the proxy statement should have given effect to the value of the intangible assets of CN (such as the trade names "Vogue," "Glamour," and "Bride's Magazine") which were carried on the company's books at $1. The Respondents in the appraisal took the same position.

The issue was fully aired and explored at the appraisal hearing. Witnesses testified before the appraiser on the following matters:

1) That CN accounted for its intangible assets in conformity with generally accepted accounting principles consistent with those followed in the industry (T 649–650, 652).[4]

2) That (as experts on both sides testified) since CN was a going concern, the value of intangible assets was to be determined by their earning power. (T 667, 867–869, 1308, 3775–3776).

3) That the intangible assets owned by CN contributed to an important degree to CN's earnings (T 667, 1308, 3776–3777).

The appraiser carefully reviewed the company's earnings record in his report (at pp. 39–42) and concluded that the "overall earnings picture for C.N. was viewed by the Appraiser as a positive element in the assessment of fair value." (p. 42).

As indicated above, the amended complaint also asserted that material omissions were made as to CN's holdings in the Butterick Company. Here (par. 32) it is claimed that the proxy material (a) failed to supply either the number of shares of Butterick held by CN so that shareholders of CN could verify the market value of the stock, and (b) omitted to set forth favorable information made known to the president of CN in his capacity as a director of Butterick about its (Butterick's) earnings for the first six months of 1967 and revealed by him to defendants. As with the issue relating to the value of the company's intangible assets, so with regard to the value of CN's Butterick stock, the appraiser was informed during the hearings of all the material which plaintiff claims was improperly omitted from the proxy statement.

For example, witnesses testified or evidence was submitted at the hearings on the following points:

1) The extent of CN's holdings in Butterick—that CN owned about ⅓ of the outstanding Butterick common.

---

4. "T" refers to Appraisal Transcript.

2) That CN considered the Butterick investment as a fixed asset which it did not intend to sell. (T 468–470, 503–504, 663–664, 980–981).

3) The royalties which CN received for Butterick's use of the name Vogue; the value of CN's representation on Butterick's board; that when CN purchased an interest in Mobile News in cooperation with Patriot it chose to reduce dividends and go into debt rather than sell its investment in Butterick. (T 662–664).

4) The "quite substantial" increase in Butterick's earnings in 1965 and 1966 and the resulting increased dividends paid to CN. (T 665–666).

5) The pattern of quotation of the prices of Butterick stock. (T 2563–2566).

6) The direct contribution of Butterick's increased earnings to CN's earnings (included in CN's "other income") and the consequent contribution of Butterick to the success of CN's operations. (T 225–228, 666–668).

7) That (as Respondents' witnesses testified, in accord with plaintiff's position in this action) CN's Butterick stock should be valued as a liquid asset based on its over-the-counter quotations, and that its $30 asked price on June 5, 1967 was reasonable. (T 2564–2566, 3749–3751, 3756–3758).

And in his report the appraiser specifically referred to the facts relating to CN's Butterick investment (at pp. 9, 41) and concluded (p. 60):

"As to the sundry investments, the largest part of which is the Butterick common stock, dividends and royalties derived therefrom were included in the $1.66 per share earnings figure used in ascertaining the investment value herein. Moreover, inasmuch as C.N.'s Butterick investment permitted it to participate in the pattern business and was considered as a fixed asset which C.N. did not intend to liquidate (T 468–470; 503–504; 663–664; 980–981; 1913–1914), it was also a positive influence on the Appraiser's determination of the price earnings ratio."

## II.

The defendants present two[5] major arguments in support of their motions: first, that the defendants are not liable to the public shareholders of CN or CN itself because there is no causal connection between the claimed proxy misrepresentations and the merger or its consequences; second, that, assuming arguendo that there is such liability, neither the corporation nor the public shareholders have suffered damage.

As to the first contention, defendants rely on a long line of cases in this District, such as Barnett v. Anaconda Co., D.C., 238 F.Supp. 766 (1965); Hoover v. Allen, D.C., 241 F.Supp. 213 (1965); Robbins v. Banner Industries, Inc., D.C., 285 F.Supp. 758 (1966); Adair v. Schneider, D.C., 293 F.Supp. 393 (1968); Weiss v. Sunasco, Incorporated, D.C., 295 F.Supp. 824 (1969); and Laufer v. Stranahan, CCH Fed.Sec.L.Rep ¶ 92,617 (1970), which hold that no cause of action exists under § 10(b) or § 14(a) of the Act unless there is some causal connection between the alleged violation and injury, and that, as stated in *Laufer*, where the majority stockholder "was in a position to approve the merger by its vote regardless of the proxy statement and regardless of the votes of the other shareholders, the necessary causal link cannot exist." (CCH Fed.Sec.L.Rep. at p. 98,775). It is undisputed that Patriot was in such a position vis-a-vis the CN-Patriot merger.

---

5. Defendants also contend that plaintiff's claim should be dismissed because the facts establish that she did not rely on the contents of the proxy statement. In view of our finding that the claims based on misrepresentations or omissions in the proxy statement must be dismissed because the record establishes that neither the stockholders nor CN were damaged, we find it unnecessary to consider the question of non-reliance or what its legal effect would be.

As to the damage issue, defendants argue, first, that the shareholders were not injured by the merger because the plan called for payment to them of $18.50 per share, the precise amount which the evidence presented on this motion (that is, the appraisal proceedings and report) shows to have been the value of each share on the date of merger, taking into account all items which plaintiff claims should have been disclosed in the proxy statement; and second, that CN has suffered no loss since it has continued in existence at all times and has continued to own the assets (or the proceeds of the assets) which plaintiff claims the defendants purchased from CN at below their true value.

Plaintiff meets these claims head on. As to the question of causation, she claims that the cases on which defendants rely (cited above) do not foreclose a finding of "causal connection." She contends that footnote 7 in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970) (which held misrepresentations in a proxy statement prior to a merger vote to be actionable where the minority votes were *required* to approve the merger), reading:

"We need not decide in this case whether causation could be shown where the management controls a sufficient number of shares to approve the transaction without any votes from the minority. Even in that situation, if the management finds it necessary for legal or practical reasons to solicit proxies from minority shareholders, at least one court has held that the

proxy solicitation might be sufficiently related to the merger to satisfy the causation requirement . . . "

implies that in such a case (as here) the causation requirement *is* satisfied, and she relies on such cases as Laurenzano v. Einbender, 264 F.Supp. 356 (E.D.N.Y. 1966), and Gerstle v. Gamble-Skogmo, Inc., 298 F.Supp. 66 (E.D.N.Y.1969), as holding to that effect.

As to defendants' argument that, assuming arguendo there has been a violation of §§ 10(b) and 14(a), neither the stockholders nor the corporation have been damaged, she counters:

First, that on such an assumption, the merger is void under § 29(b) [6] of the Act, and that, since it may not be practicable to reconstitute CN in its pre-merger state even though the merger be void, CN's public shareholders are entitled to rescissional or restitutional damages in the amount of $18.50 plus the value of intangibles and added value of the post-merger sale of CN's Butterick stock not included in the proxy statement valuations.

Second, that CN itself has been damaged, since the post-merger CN is a different entity than the pre-merger CN, and therefore there was a transfer from CN to a new entity of assets worth more than it received on the basis of the proxy statement values.

### III.

A. *Causation.*[7]

██ There is no question that in order to state a cause of action under § 10(b)

---

6. Section 29(b) of the Act provides in pertinent part:

"Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or

regulation, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule, or regulation: . . . "

7. As noted at the outset of the opinion, defendants have moved to dismiss under Rule 12(b) (6) for failure to state a claim upon which relief can be granted as well

or § 14(a) plaintiff must establish that there is a causal relation between the alleged violation and the alleged injury. The rule falls in the class of "but for" requirements, that is, the plaintiff must demonstrate that but for the alleged violation the injury would not have occurred. It is equally true that where, as here, the majority stockholder could, by its own vote, cause approval of the merger, regardless of the minority vote, the judges of this District have held with apparent uniformity that the "necessary causal link cannot exist." (e. g., *Laufer*, supra, at p. 98,775). Some doubt may be expressed, however, as to what butterfly will emerge from the presently visible cocoon. In the footnote in *Mills*, supra, 396 U.S. at 385, 90 S.Ct. 616, at 622, 24 L.Ed.2d 593, the Supreme Court, though of course not deciding, appears to dignify the proposition that even where a majority stockholder does not require minority votes for merger approval, but does solicit proxies, "the proxy solicitation might be sufficiently related to the merger to satisfy the causation requirement." We note also that the Court of Appeals of this Circuit has recently remarked, in an analogous situation, that ". . . of course, approval was not meaningless; minority shareholder approval has value whether or not it is strictly essential to the power to act." Laurenzano v. Einbender, 448 F.2d 1, 5 (2d Cir. 1971). And there is merit to Judge Dooling's observation in Laurenzano v. Einbender, supra, 264 F.Supp. at 361:

> "It may be that an unfavorable vote from the minority stockholders would have brought about modification or reconsideration of the transactions; in corporate circles, consensus can be a desideratum. It may be that a value was perceived and sought in just such

a favorable vote as was obtained from the one-quarter of the minority stockholders who mailed in their proxies. Such seemingly pointless approbations have their uses, and even the record of disclosure itself may serve a range of useful purposes."

Nevertheless, however piquant the subject and the different views of it may be, since we find, as stated below, that neither the stockholders nor CN have suffered damage, we need not and we do not determine whether the facts here "satisfy the causation requirement."

### B. *Damage.*

■ (1) *The stockholders:* On the record before us we find that the public stockholders of CN were not damaged by the merger or as a result of the facts alleged in the complaint. On the voluminous evidence submitted by defendants in support of their motion, which is uncontested by the plaintiff [8] and which we have studied in detail, we conclude that the value of the stock on the date of the merger was $18.50, *taking into account all the factors which plaintiff claims were omitted from the proxy statement.* As indicated above, the appraiser's lengthy report, and his determination that the CN stock's fair value was $18.50, based on exhaustive hearings at which the appraisal Respondents presented all the facts and arguments which plaintiff here presents, and confirmed by the State Court, reflected the true value of CN's intangible assets and its Butterick stock *however those values may have been set forth in the proxy statement.* And even if it be assumed, as argued by plaintiff, that because the merger is void under § 29(b) of the Act the public shareholders are entitled to rescissional or restitutional damages, they are nevertheless not entitled to any element of value attributable

---

as under Rule 56 for summary judgment. Since both defendants and plaintiff have presented "matters outside the pleadings" which have not been excluded by the court, the defendants' motion must be treated as a motion for summary judgment. (Rule 12(b), Fed.R.Civ.P.).

8. Indeed, the plaintiff presented no evidence whatsoever as to the value of the CN stock at the time of the merger. Her sole submission was an affidavit of counsel containing arguments and conclusions but necessarily unilluminating as to the value of the stock.

to CN's post-merger sale of its Butterick stock, since no claim is made (and the facts do not establish) that any misrepresentation occurred as to that sale. In other words, as to that sale there is no claim (or factual basis for a claim) that there was a violation of § 10(b) or § 14 (a).

Such decisions as Speed v. Transamerica Corporation, 235 F.2d 369 (3d Cir. 1956), Gerstle v. Gamble-Skogmo, Inc., supra, and Myzel v. Fields, 386 F.2d 718 (8th Cir. 1967), do not require a contrary conclusion. In those cases the complaint alleged and the proof established that the defendants knew, or had reason to believe, that the merging corporation's property would be sold at a higher value than that set forth in the proxy statement. Such is neither the claim nor the fact in the instant case. This substantial distinction alone makes Speed, Gerstle and Myzel inapplicable here. But beyond that, in those cases the merger plans did not provide for payment to the dissenting shareholders in an amount proven— as here—to be the actual value of their stock, taking into account the misrepresentations or omissions of which they complained.

■ (2) The corporation: We find also that CN was not damaged as a result of the merger or its consequences. CN survived the merger, and neither profited nor lost by it. Plaintiff's contention that the post-merger CN is a different entity than the pre-merger CN, and therefore it transferred to a new entity assets worth more than it received on the basis of proxy statement values, is without merit in law or in fact.

To support its argument on the point, plaintiff relies on Mertz v. Guarantee Trust Co. of New York, 247 N.Y. 137, 159 N.E. 888 (1928). In that case the issue was whether a trustee of a trust whose provisions required him to continue to hold the stock that had formed the original corpus of the trust was required to continue to hold in the trust the stock he had received in exchange when the corporation whose stock the trust originally owned was consolidated with a second corporation to form a third, and when the business purposes of the new corporation differed from those of the old. It was held that he did not. Aside from the obvious factual differences between Mertz and the instant case, the issue—which Chief Judge Cardozo characterized as the question of whether the "character of the investment" had altered—was different. Furthermore, the factual difference between the consolidation in Mertz and the merger in the instant case is legally significant. Section 901(b) of the New York Business Corporation Law defines a consolidated corporation as "the new corporation into which, two or more constituent corporations are consolidated," (emphasis added) whereas it defines as a "surviving corporation" "the constituent corporation into which one or more other constituent corporations are merged." In other words, as a matter of law, CN survived the merger and has never ceased to exist. Finally, the indicia of its survivorship are strikingly apparent in the terms of the merger plan itself, which provided:

A. At the effective date of the merger, Patriot Nast shall be merged into Conde Nast, the separate existence of Patriot Nast shall cease, and Conde Nast as the surviving corporation shall continue to exist by virtue of and shall be governed by the laws of the State of New York, with its present name.

B. Except for amendment as to capital, the Certificate of Incorporation of Conde Nast shall continue to be the Certificate of Incorporation of the surviving corporation.

C. The By-Laws of Conde Nast as in effect on the effective date of the merger shall continue to be the By-Laws of the surviving corporation.

D. The directors of Conde Nast upon the effective date of the merger shall be the directors of the surviving corporation.

E. The officers of Conde Nast upon the effective date of the merger shall be the officers of the surviving corporation.

Thus, it is apparent that CN remained CN. It did not transfer any of its assets to a new entity, and continued to hold them after the merger except for the Butterick stock which *it*, of course, sold and the entire proceeds of which *it* received. Under the circumstances, it would be casuistry to say that it was damaged by misrepresentations or omissions in the proxy statement.

In the light of this discussion, defendants' motion for summary judgment is granted as to the claims arising from the proxy statement, and plaintiff's motion for summary judgment on those claims is denied.

## IV.

■ Thus far we have dealt with the issues relating to the proxy statement. There remains for disposition the claim that the defendants caused CN to purchase an interest in Mobile News, Inc. for the purpose of depleting CN's assets in order to depress the market price of CN's stock so that upon merger it would be worth less than if CN had not made the purchase. As to this claim, summary judgment cannot be granted for either party, since genuine issues of material fact exist. In particular, it is impossible to ascertain on the record as it stands whether defendants fraudulently conceived such a plan and imposed it on CN. The purchase may have been motivated with fraudulent intention or, on the other hand, in good faith and for sound business reasons. The determination must depend on findings as to the intent of the defendants involved, and disposition of such matters cannot be made by a battle of affidavits (or depositions), but only

on trial. The Supreme Court's ruling in Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), is especially applicable to these surviving claims:

> "We believe that summary procedures should be used sparingly . . . where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.' "

## V.

■ There remains for determination[9] the question whether the case is properly brought as a class action, and we rule that it is as to the surviving Mobile News claims. As we construe those claims, plaintiff alleges that the defendants injured *all* of the former public shareholders (*and CN*) by forcing CN to purchase an interest in the Mobile News, thereby depleting CN's assets, with the intentional consequence of causing CN to pass its dividends so that the market value of CN's shares was unjustifiably depressed.[10]

According to the affidavit of C. Coudert Nast in opposition to plaintiff's class action motion, there appear to have been 1103 public shareholders,[11] a number clearly so large as to render the joinder of members impracticable within the meaning of Rule 23(a), Fed.R.Civ.P. There can be no dispute that the ques-

9. Since summary judgment is not granted as to the Mobile News claims, there is no need to rule on plaintiff's argument that if summary judgment were granted on the ground that there was no violation of the Act, and accordingly no federal jurisdiction, the court should nevertheless maintain jurisdiction to determine the pendent claims and the question of attorneys' fees.

10. If, as plaintiff claims, defendants foisted the Mobile News purchase on CN,

contemplating a later merger of CN and Patriot, with the objective of reducing the amount that would be payable to the public stockholders at the time of merger, the actions of defendants would certainly violate § 10(b) of the Act. It is far less clear whether the provisions of § 14(a) would apply.

11. Affidavit of C. Coudert Nast, p. 7, in Opposition to Motion for Class Action Determination.

tions of law and fact as to the Mobile News claims are common to—and typical of—the class, and as to these surviving claims the common questions of fact and law not only predominate (Fed.R.Civ.P. Rule 23(b) (3)), but there appear to be no questions which would affect individual members only, that is to say, that if plaintiff establishes that the purchase of the interest in Mobile News, Inc. was imposed on CN fraudulently, by misrepresentation, or with improper motive, and that it resulted in damage to her, such proof and its legal consequences will apply equally to all former public shareholders.

It is also beyond dispute that for the determination of such common questions affecting so large a class, a class action is "superior to other available methods for the fair and efficient adjudication of the controversy" within the meaning of Rule 23(b) (3).

■ Plaintiff's motion for determination of a class action as to the Mobile News claims is therefore granted. Notice can easily be given by first class mail to members of the class at their last known addresses on the books of the company or its transfer agent. The costs of preparing the notice and mailing it to a class of 1103 will not be seriously burdensome and should be borne by CN at this time, the ultimate charge to abide the outcome of the litigation.

To conclude, defendants' motion for summary judgment is granted as to claims relating to the valuation of CN's goodwill, intangible assets and Butterick stock, and denied as to claims relating to CN's purchase of an interest in Mobile News, Inc. Since no claims are made against Goldman Sachs & Company in relation to the Mobile News purchase, its motion for summary judgment is granted in full. Plaintiff's motion for summary judgment as to liability is denied. Plaintiff's motion for a class action determination is granted as to the claims relating to CN's purchase of an interest in Mobile News, Inc.

Settle order on notice.