Clevester DAVIS et al., Plaintiffs,

v.

AVCO CORPORATION et al.,
Defendants.

No. C 73–226.

United States District Court,
N. D. Ohio, W. D.

Jan. 11, 1974.

784

Russell A. Kelm, Advocates for Basic Legal Equality, Matt J. Kehoe, Toledo, Ohio, for plaintiffs.

Andrew E. Anderson, Spengler, Nathanson, Heyman, McCarthy & Durfee, Toledo, Ohio, for defendants.

## MEMORANDUM AND ORDER

WALINSKI, District Judge.

This cause is before the Court on defendants' motions to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted, and to dismiss the class action aspects of the complaint. Plaintiff has filed a motion for conditional certification as a class action and opposition to defendants' various motions. Plaintiff has also filed copious briefs in support of his contentions. The Court will first consider the motion to dismiss, for a favorable ruling thereon would obviate the need to consider the motion for conditional certification.

### I. The Factual Allegations

The complaint, as yet unanswered, is a class action for damages, and injunctive and declaratory relief, brought under the Securities Act of 1933, 15 U.S.C. § 77a et seq., and the Securities Exchange Act of 1934, 15 U.S.C., § 78a et seq. Jurisdiction of this Court is invoked pursuant to 15 U.S.C., §§ 77l, 77v and 78aa.

Plaintiff begins by alleging [1] that in early 1971, he became the subject of re-

---

1. In the following discussion, the Court will assume the allegations in the complaint to be facts even though they are as yet unproven. Thus, the Court's failure to qualify a

peated solicitations to participate in a "great investment opportunity" known as Dare To Be Great [hereinafter DBG] by investing $5,000 in what was called the "Adventure 4" level. Without going into plaintiff's allegations in great detail, suffice it to say that the solicitation efforts of DBG followed the pattern described by the Court in SEC v. Glenn W. Turner Enterprises, Inc., 474 F.2d 476, 479–480 (9th Cir. 1973), and in Note, Dare To Be Great, Inc!: A Case Study of Pyramid Sales Plan Regulation, 33 Ohio St.L.J. 676, 677–86 (1972). Plaintiff attended meetings which were conducted with a revivalistic fervor and held out the promise of great wealth if one would but participate in the DBG program at one of the various, and increasingly expensive, levels of participation. Plaintiff, and the members of the class he represents, were subjected to almost unrelenting pressure to participate in the scheme by DBG and its agents.

Actually, the DBG scheme was a pyramid operation, accompanied by hard-sell tactics, whose motivational, self-improvement course was of only nominal worth. The only possible value which was purchased by the unwitting participant was the right to sell the scheme to others, and this value was dubious because of the saturation and pyramiding inherent in the scheme.

Defendants were involved in this operation in several important aspects. The first mention of Avco Financial Services occurred at a "Success Adventure" meeting in Toledo during May, 1971, when the state director of DBG advised the prospective participants to contact Avco Financial Services in Toledo if they wished to finance the amount needed to participate. It then appears that after a period of daily pressure by DBG to sign up, the plaintiff was urged to contact defendant McCormick, the manager of one of defendant Avco Corporation's offices in Toledo, for the purpose of discussing financing. Unknown to plain-

tiff, DBG had already arranged in advance with Avco for plaintiff to take out a loan with Avco. Subsequently, plaintiff called McCormick and agreed to come in to see him.

At the meeting with McCormick (and an agent of DBG) in Avco's office, plaintiff expressed doubts concerning DBG. McCormick then assured plaintiff that DBG:

"* * * was a good investment, that McCormick had thoroughly investigated [DBG], that McCormick had been to Success Adventure meetings in Toledo and on a 'go-tour' to Indianapolis, that by the time the first payment was due to AVCO on the loan, plaintiff would have made enough money from [DBG] sale's commissions to pay off the entire loan, that plaintiff would make money from this investment, and that if plaintiff sold [DBG] to others who needed financing, AVCO would finance such subsequent purchasers."

The complaint further alleges that Avco and its agents and employees made similar statements and representations to all members of the class, and that these statements were false and misleading and designed to induce reliance by plaintiffs who did, in fact, rely on these representations. Thus, plaintiff was induced to sign a loan agreement with Avco Financial Services for $2,672.78, and to issue his own promissory note, styled a security, which was purchased "and underwritten" by Avco. The proceeds of the loan were then used by plaintiff:

"* * * to purchase for $2,000 a security underwritten by defendants, commonly known as Dare To Be Great Adventure 3, from [DBG's] agent."

In this manner, the defendants herein, and DBG is *not* a party, participated directly and indirectly in the financing and distribution of DBG as a security; and Avco Corporation and DBG conspired for DBG to issue, and Avco Cor-

statement with the word "allege" or other words of similar import should not be con-

strued as any indication that the Court has found the statement to be true.

poration to underwrite and finance, DBG as a security.

Finally, Avco failed to advise plaintiffs of the potential infirmities of the saturation and pyramiding of DBG, or of the true financial position of DBG (and of Glenn W. Turner Enterprises). Avco either knew or should have known that the statements of McCormick were false, misleading, and failed to state material facts; and these statements were part of a scheme and course of business to defraud plaintiffs. Defendants also knew that the contracts and security agreements executed by plaintiffs violated federal securities laws and were thus void.

## II. The Motion To Dismiss

Defendants assert two grounds for dismissing the complaint herein:

a) The promissory notes issued by the plaintiffs do not constitute securities within the meaning of § 2(1) of the Securities Act of 1933, or § 3(a)(10) of the Securities Exchange Act of 1934, and therefore this Court lacks subject matter jurisdiction.

b) The complaint fails to state a claim on which relief can be granted because defendants are not "underwriters" or "dealers" as defined by the acts.

### a) Subject Matter Jurisdiction

It is clear that this contention turns solely on whether plaintiffs' promissory notes constitute "securities" as defined by § 2(1) and § 3(a)(10). Section 2(1) states that "security" means "* * * any note, stock, treasury stock, bond, debenture, evidence of indebtedness * * *." 15 U.S.C., § 77b(1). [Emphasis added.] Section 3(a)(10) contains virtually the same language except that the words "evidence of indebtedness" are omitted. 15 U.S.C., § 78c(a)(10).

It can be seen that the literal definitions begin with the word "note." Plaintiff thus argues that the words "any note" mean exactly that—any note

—and that this Court should adopt a literal interpretation of those definitional sections. Defendants argue that while notes are literally covered by the acts, the Congress intended, and the courts have usually required, some showing of the commercial setting in which the alleged transactions took place, and that these notes could not possibly be securities in view of the purely consumer financing nature of the transactions which are the subject matter of the complaint. Therefore, they argue, since the notes are not securities, nothing herein is covered by the federal securities laws, and thus this Court is without subject matter jurisdiction.

The Court is mindful that the federal securities laws are remedial in nature and thus should be broadly construed so as to effectuate their purposes. Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). It should also be noted that past decisions have indeed indicated the need to take into account the economic realities of the transactions which are the subject of the case in identifying a security. See e. g., SEC v. W. J. Howey Co., 328 U.S. 293, 298, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).

"The test * * * is what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect." SEC v. Joiner Corp., 320 U.S. 344, 352–353, 64 S.Ct. 120, 124, 88 L.Ed. 88 (1943).

However, Howey involved the definition of "investment contract", Joiner involved oil leases, and Tcherepnin involved withdrawable capital shares in a Savings and Loan Association, none of which fit within the literal meaning of notes, stocks or bonds, which are the commonest forms of securities. The use of the economic realities test when the device fits within one of the literal definitions is not so clear.

Professor Coffey takes the position that the more desirable approach is to

give the economic realities test "primacy over literal coverage." Coffey, The Economic Realities of a "Security": Is There a More Meaningful Formula?, 18 Western Reserve L.Rev. 367, 407 (1967). The reason for this primacy is that:

"If * * * courts also adopt a practice of liberally defining the terms 'stock,' 'bond,' 'note,' or 'evidence of indebtedness,' any examination of 'economic realities' might well be foreclosed with respect to the majority of alleged 'security' transactions." *Id.* at 406.

The danger of such a foreclosure of examination is said to be that it inevitably leads to curious results which the drafters of securities fraud statutes did not envision. *See, e. g.,* Strauss v. State, 113 Ga.App. 90, 147 S.E.2d 367 (1966). [Money order held to be security.]

■ This Court is persuaded by Professor Coffey's proposition that the term "security" be viewed as:

"* * * a transaction whose characteristics distinguish it from the generality of transactions so as to create a need for the special fraud procedures, protections, and remedies provided by the securities laws." Coffey, loc. cit. *supra,* at 373.

Thus, as applied to this case, the promissory notes herein are securities within the meaning of §§ 2(1) and 3(a)(10) if the events leading up to their issuance are such as to call into play the anti-fraud protections and remedies of the securities laws, consistent with the purposes Congress had in mind in adopting these laws, and notwithstanding the literal applicability of the definitional sections. In short, the commercial setting, or economic realities, of the transaction is relevant in interpreting the term "security" even where the device at issue is a note.

■ At the outset, the Court notes that we are at the pleading stage, and defendants have not yet answered the complaint. Therefore the allegations in the complaint should be construed in a light most favorable to the plaintiff when considered as against a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure. *Cf.* Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The complaint indicates that plaintiff and the members of the class he represents were a group of unsophisticated investors who probably did not understand the potential (and likely) risks to the money they were investing in DBG and which they were borrowing from defendants. On the other hand, plaintiffs appear to have been persuaded by the representations of defendant McCormick as to the soundness of their prospective participation and presumably viewed him, and by inference Avco Corporation, as being more knowledgeable than they in such matters. As respects the various parties involved in the transactions, McCormick could be held to be more sophisticated as to the risks involved than the plaintiff. Defendants held out the promise of quick and sure financial returns, even predicting that the loan applicant will be able to pay off the loan before the first installment is due.

It is not necessary to go further into the facts alleged to find that these allegations, if proven, are transactions sufficiently distinguishable from ordinary consumer or commercial transactions that the anti-fraud provisions of the securities laws fill a special need. And it is at least arguably true that such transactions are of the kind which Congress had in mind in defining the term "security."[2] Here were unsophisticated investors, with little knowledge or understanding of the likely risks their in-

**2.** [This subchapter] reaches the novel, uncommon or irregular devices if it is proved that they are widely offered or dealt in under terms or courses of dealing which established their character in commerce as invest-ment contracts or as any interest or instrument commonly known as a security. SEC v. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943).

vestment faced, being persuaded by the manager of a finance company with pictures of future profits which will surely follow. It appears that these are the very kinds of transactions which Congress intended to sweep under the umbrella of the anti-fraud provisions of the securities laws. Several Supreme Court decisions have concluded that the anti-fraud provisions of federal securities legislation should be flexibly construed in order to carry out the remedial purposes. *See e. g.,* Affiliated Ute Citizens v. United States, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); Superintendent of Ins. v. Bankers Life & Casualty Co., 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); and SEC v. Capital Gains Research Bureau, 375 U.S. 180, 186, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). Decisions in other federal courts only reinforce this view when promissory notes have been used. *See* Llanos v. United States, 206 F.2d 852 (9th Cir. 1953), cert. denied, 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417 (1954); SEC v. Thunderbird Valley, Inc., 356 F. Supp. 184 (D.S.D.1973); SEC v. Addison, 194 F.Supp. 709 (N.D.Tex.1961); and United States v. Monjar, 47 F.Supp. 421 (D.Del.1942), aff'd, 147 F.2d 916 (3d Cir. 1944).

For these reasons this Court holds that, based on the allegations in the complaint, these promissory notes constitute securities within the meaning of 15 U.S.C., §§ 77b(1) and 78c(a)(10).

#### b) *Failure to State a Claim*

The complaint is composed of six counts. Count One alleges violations of 15 U.S.C., §§ 77g and 78j(b), and Rule 10b–5 of the Securities and Exchange Commission. It alleges that defendants were "underwriters" under 15 U.S.C., § 77b(11), that defendants had knowledge of the operations of DBG and yet made false statements, as well as material omissions of facts, in their representations to plaintiffs in connection with the sale of a security, i. e., the promissory notes. In

order to dismiss for failure to state a claim, it must be clear that plaintiff could prove no set of facts in support of his claims which would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Thus, it is clear that Count One states a claim under that test. *See* Superintendent of Ins. v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

Count Two alleges that defendants solicited and attempted to buy securities from plaintiffs within the meaning of 15 U.S.C., §§ 77b(3) and 77*l*(2). It further alleges that in this solicitation defendants made false, oral statements, while having knowledge of DBG's operations and financial standing, in violation of 15 U.S.C., § 77*l*(2); and defendants are also in violation of the margin requirements of 15 U.S.C., § 78g. This count also clearly states a claim. *See* Emmi v. First Manufacturer's Nat. Bank, 336 F.Supp. 629 (D.Me. 1971); and Thiele v. Shields, 131 F. Supp. 416 (S.D.N.Y.1955). Moreover, like Judge Young, this Court is of the opinion that a private action by an investor is an effective and legitimate means of enforcing the margin requirements of § 78g. *See* Golob v. Naumann, Vandervoort, Inc., 353 F.Supp. 1264 (N.D.W.D.Ohio 1972).

Count Three alleges that defendants offered and sold non-exempt securities without filing a registration statement as required under 15 U.S.C., §§ 77g and 77aa or a prospectus as required by 15 U.S.C., § 77j. Therefore, it is alleged, defendants violated 15 U.S.C., §§ 77e(a)(1), (a)(2), (b)(2), (c); 77k(a); and 77*l*(1). It appears to this Court that this count states a valid claim under the previously-mentioned test.

This Court was unable to find any cases directly on point, but a careful reading of the appropriate sections convinces the Court that a claim under § 77e is good as against a motion to dismiss for failure to state a claim where,

as here, the pleadings allege an offer or sale of security, use of the mails or an instrumentality of interstate commerce, and a failure to file a registration statement for a non-exempt security.

Count Four alleges that defendants are brokers or dealers within the meaning of 15 U.S.C., § 78c(a)(4) and (5), and that they made use of the mails for transactions in the sale of securities without registering as brokers or dealers pursuant to 15 U.S.C., § 78o(a)(1), and further made use of deceptive devices pursuant to 15 U.S.C., § 78o(c). This count appears also to state a claim.

Again, the Court could find, and the parties offered, no cases precisely on point. However, other courts have held that this section, and other related sections, of the securities laws carry an implied right of civil recovery by buyers or sellers of securities when they allege, as here, use of the mails or any instrumentality of interstate commerce for the purpose of making or inducing a transaction in the sale of securities by a broker or dealer, as defined by § 78c, who failed to register as brokers or dealers. Further, the use of a fraudulent, deceptive, or manipulative device by such an unregistered broker or dealer, as here alleged, is a valid claim under § 78o(c). *Cf.* Rekant v. Dresser, 425 F.2d 872 (5th Cir. 1970).

The Fifth and Sixth Counts are state law claims which are sought to be pended to the federal claims under the doctrine of pendent jurisdiction. Count Five alleges violations of Ohio's Blue Sky laws, §§ 1707.01(E) and (F), and 1707.14. Count Six alleges a common law claim of fraud and deceit; and it contains allegations of false, material statements, known to be false when made, which were made with intent to induce plaintiffs to rely on these statements, which they did in fact rely on, and which resulted in injury to the plaintiffs. All of these claims are alleged to have risen from the same set of operative facts as the federal claims and are of such a nature that plaintiffs would realistically be expected to bring them all in one lawsuit. Hence, these state claims are good as against a motion under Rule 12(b)(6), Federal Rules of Civil Procedure, and this Court has jurisdiction over them which it chooses to exercise. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### III. The Class Action

Since it is clear that the motion to dismiss must be denied, the Court must now consider plaintiff's motion for conditional certification as a class action pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure.

Plaintiff brings his class action under Rule 23(a) and (b)(3), Federal Rules of Civil Procedure. He alleges that the proposed class is composed of all persons who obtained loans from the defendants, including the parent corporation, subsidiaries and affiliates across the nation, for the purpose of participating in a security known as Dare To Be Great within three years of the filing of this action. Plaintiff estimates the size of the class nationwide to be approximately 1,000 persons. He further alleges that he adequately represents the class due to his personally large stake in the outcome, and that he is represented by institutional counsel who will vigorously conduct the litigation. In this regard, the Court takes notice of the fact that plaintiff's counsel, Advocates for Basic Legal Equality, is indeed qualified institutional counsel, experienced in class action litigation, having litigated several large class action lawsuits in this Court.

Plaintiff's allegations as to the DBG security at issue are confined to the Adventures 3 and 4 and the $1,000 plan. He alleges that the Adventure 3 involved a sum of $2,000 and Adventure 4 involved $5,000. Therefore the probable amounts which any member of the class would have at stake could range from $1,000 to an amount in excess of $5,000.

Plaintiff further alleges that his claims are typical of the class he repre-

sents since he secured a loan from defendants for the purpose of investing in DBG and has received nothing in return on his investment. He states that subclasses can be created as to damages.

The class is so numerous, in excess of 1,000 persons, that joinder of all members is impracticable. Since the complaint alleges that a conspiracy between Avco Corporation and DBG existed, and the class contains *all* persons who obtained loans from any of Avco's subsidiaries and affiliates as a result of the conspiracy, this action could have a scope at least as broad as the state of Ohio and perhaps as broad as the country.

It is further alleged that there are common questions of law and fact relating to the representations made by the defendants, who are claimed to have acted as underwriters to all the members of the class, which relate to violations of the same sections of the Securities Act of 1933 and the Securities Exchange Act of 1934. It is also said that the plaintiff's claims as to false and misleading statements are typical of the class claims.

The complaint also alleged that these common, typical claims as to fraud and misrepresentation and the resulting violations of federal securities laws predominate over any individual claims of members of the class; and therefore, given the size of the class and commonality of claims, a class action is said to be superior to any other available method for resolution of this dispute. In this regard plaintiff asserts that there is no real conflict of interest between class members since they are all seeking similar relief on identical claims. Therefore, given the complexity of a case such as this, no individual member would have any interest in controlling the litigation.

Finally, in order to avoid a multiplicity of actions, something that is common to securities fraud cases, there is desirability in concentrating the litigation to a class action in this Court which is also a proper and desirable forum having power to hear all the claims and fashion a remedy.

 As plaintiff has correctly pointed out, in order to maintain a class action under Rule 23(b)(3), it is necessary for the Court to make at least six determinations. Rule 23(a) requires four findings, which may loosely be lumped under the headings of numerosity, commonality, typicality, and adequacy of representation. Rule 23(b)(3), further requires a finding that the common questions of law or fact predominate over any questions affecting only individual members, and a finding that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3), Federal Rules of Civil Procedure.

 Since this cause is still at the pleading stage and defendants have not yet answered the complaint, this Court will assume that the facts as stated in the pleadings are true for the purposes of this motion. Green v. Wolf Corp., 406 F.2d 291, 294 (2d Cir. 1968); Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1969); Siegel v. Chicken Delight, Inc., 271 F.Supp. 722, 725 (N.D.Calif.1969).

 Plaintiff alleges that the asserted class is composed of all persons who obtained loans from Avco Corporation or any of its several subsidiaries and affiliates nationwide, and that the class numbers in excess of 1,000 persons. It will be recalled that plaintiff has alleged that defendants engaged in scheme, practice, and course of business for the purpose of defrauding plaintiff and the members of the class he represents. It should also be noted that plaintiff has alleged a conspiracy between the parent Avco Corporation and Dare To Be Great in which DBG was to issue and Avco was to underwrite and finance DBG's securities. The alleged scheme and course of conduct, as well as the conspiracy, appear to extend beyond

the geographic area of this Court, thus making the size of the alleged class to be quite numerous. Hence, this Court finds, based on the allegations being assumed to be true, that the class is too numerous and too widely scattered to be practicably joined.

As previously shown, it has been alleged that there are common questions of law and fact relating to the representations made by the defendants which are claimed to have violated the same sections of federal securities laws as to all members of the class. In finding commonality of claims, it has been said that the:

"* * * fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." 3 B J. Moore, Federal Practice, ¶ 23.45[2], at 23–756 (8th Release 1969).

And in the area of securities fraud cases, one court has pointed out that:

"* * * taking the issue in the context of the securities laws and realizing that 'the ultimate effectiveness of the federal remedies * * * may depend in large measure on the applicability of the class action device,' [citation omitted], the interests of justice require that in a doubtful case, such as was presented here when considered by the trial court, any error, if there is to be one, should be committed in favor of allowing the class action." Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

The court in *Esplin* was speaking in the context of a finding of common questions of law or fact. *See also* Korn v. Franchard Corp., 456 F.2d 1206, 1213 fn. 18 (2d Cir. 1972).

This Court is of the opinion that where, as here, the complaint alleges a course of conduct in which similar oral representations were made to all the members of the class, the requirement of common questions of law or fact has been met. *See* Dolgow v. Anderson, 43 F.R.D. 472, 488–490 (E.D.N.Y.1968).

It should also be obvious that plaintiff's claims are typical of the class claims. Both assert that defendants interfered with the same legal interests on the same set of facts.

The Court has already indicated that the representation of the class will be adequate by this plaintiff. He has a sufficiently large stake in the outcome and counsel have a demonstrated proficiency in class actions.

This leaves for consideration the requirements of Rule 23(b)(3), i.e., predominance of common issues and superiority of a class action. Defendant, in its memorandum in support of its motion to dismiss the class action aspects of the complaint, filed July 23, 1973, states that:

"* * * where the activities allegedly giving rise to liability are standardized, as where uniform misrepresentations are made to all members of the group, a class action will be proper." Def. Memo., p. 6.

A reading of the complaint suggests that this is exactly what plaintiff has alleged—standardized, uniform misrepresentations to all members of the class. Defendants would have this Court now find that there could have been no standardized, uniform misrepresentations to all of the members of the class on this motion to certify. But that is the very subject of this lawsuit. Obviously for plaintiff to prevail, at trial, his proof will have to conform to his pleadings. It does not seem to this Court, however, that the interests of justice dictate a denial of class action status because of the difficulties of proof.

■ For the present, plaintiff has alleged that the common issues of fraudulent misrepresentation under 15 U.S.C., §§ 77g and 78j(b) and Rule 10b–5, as well as the failure to register charges under 15 U.S.C., §§ 77e, 77k and 77l, as well as the other claims, all predomimate over any other individual issues. Defendants argue that there can be no

predominance of common issues of law or fact because plaintiff has alleged *oral* misrepresentations and that therefore there will necessarily be varying representations accompanied by varying degrees of reliance. It should be noted however that plaintiff has alleged material omissions as well as misrepresentations in violation of Rule 10b–5. Where such a course of conduct is alleged, other courts have found the necessary predominance. Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968); In re Penn Central Securities Litigation, 347 F.Supp. 1327 (E.D.Pa.1972); Dolgow v. Anderson, *supra.* And plaintiff is quite correct that the Supreme Court has done away with any requirement that the plaintiff must offer positive proof of individual reliance in cases under Rule 10b–5. Affiliated Ute Citizens v. United States, 406 U.S. 128, 153–154, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

In finding predominance, some courts have used a "common nucleus of operative facts" test, when as here, standardized, uniform misrepresentations and omissions, which are used as part of a scheme or course of business or practice and which operated as a fraud, constitute the heart of the complaint. Esplin v. Hirschi, 402 F.2d 94, 99 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S. Ct. 1194, 22 L.Ed.2d 459 (1969); Siegel v. Chicken Delight, Inc., 271 F.Supp. 722, 726 (N.D.Calif.1967). This Court feels that such a test correctly describes what plaintiff has here alleged. Whatever may be individual variations in the practice which plaintiff claims took place, this Court feels that the heart of this complaint is a common nucleus of operative facts all pointing toward violations of the same legal interests. Defendants' contention that since many members of the class sponsored other members for loans to purchase DBG, they are *in pari delicto* with defendants and therefore there can be no predominance is clearly specious. The Supreme Court has only recently reiterated what it calls:

" * * * the inappropriateness of invoking broad common-law barriers to relief where a private suit serves important public purposes." Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 138, 88 S. Ct. 1981, 1984, 20 L.Ed.2d 982 (1968).

Finally, it is necessary to show that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

Numerous courts have found the class action device to be a superior method of proceeding in a securities law fraud case. Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968); Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir. 1967); Feder v. Harrington, 52 F.R.D. 178 (S.D.N.Y. 1970); Cohen v. Franchard, 51 F.R.D. 167 (S.D.N.Y.1970); Rosenblatt v. Omega Equities Corp., 50 F.R.D. 61 (S.D.N.Y.1970). Indeed one court has indicated that it thought it beyond dispute that a class action was superior to other methods in a securities fraud case. Lewis v. Bogin, 337 F.Supp. 331, 338 (S.D.N.Y. 1972).

Defendant would have the Court utilize instead a program of consolidation and liberal use of intervention and joinder. However, given the far-reaching aspects of the allegations, of which the Court has previously spoken, consolidation, intervention and joinder appear now to be highly inefficient as well as unlikely to promote the ends of justice, both for plaintiffs as well as defendants. Therefore a class seems at this point to be a superior method of disposing of this controversy.

## IV. Order

For the reasons previously expressed,

It is ordered that defendants' motion *to dismiss be, and hereby is, denied;*

That the cause herein be, and hereby is, certified as a class action for damages and other equitable relief on behalf of all persons who borrowed money through loans obtained from the defendants, including the parent corporation,

affiliates, and subsidiaries throughout the State of Ohio, for the purpose of entry into and participation in a security commonly known as Dare To Be Great, Inc., Adventures 3 and 4 and the $1,000 plan within three years of the filing of this action; and this certification shall be conditional on the results of discovery which may be directed outside the geographical limits of this Court, and evidence obtained at an evidentiary hearing to be held after the close of discovery, after which a final determination shall be made as to the propriety of a class action as well as to the size and scope thereof.

It is further ordered that the notice required under Rule 23(c)(2) be stayed until the Court receives sufficient facts from the parties as to the size and location of the class.