Willie BELL, Jr., et al.,
Plaintiffs-Appellants,

v.

HEALTH–MOR, INC., et al.,
Defendants-Appellees.

No. 75–1485.

United States Court of Appeals,
Fifth Circuit.

March 24, 1977.

Rehearings Denied May 24, 1977.

Adolph J. Levy, New Orleans, La., for plaintiffs-appellants.

Terrence E. Hall, New Orleans, La., for Health-Mor, Inc.

Robert O. Mansell, G. Gale Roberson, Chicago, Ill., Lawrence J. Molony, New Orleans, La., for defendants-appellees.

Before JONES, WISDOM and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

The case before us raises two questions. First, whether an arrangement commonly known as a referral sales agreement can be an "investment contract" and therefore a security within the meaning of the federal Securities Acts, 15 U.S.C. §§ 77a et seq., 78a et seq. Second, whether a private right of action may be implied from the federal Mail Fraud and Lottery statutes, 18 U.S.C. §§ 1302, 1341.

Defendants-appellees sell vacuum cleaners door to door, on a time-payment basis with the resulting consumer installment notes immediately discounted to financial institutions. The average price of a vacuum cleaner is approximately $380 and its cost to the vendor is approximately $75. · A vendee is given an "Ownership Dividend Certificate" which entitles him to receive $10 for the name of each potential customer he submits to the sellers, provided that the person on the list is "qualified" (under criteria established and applied by the vendors) and that the person actually submits to a sales demonstration of a vacuum cleaner.

Plaintiffs-appellants are purchasers of the vacuum cleaners. When their referral fees fell well below their expectations, they brought a class action against the appellees seeking damages and rescission of all sales agreements alleging: (a) violations of the 1933 Securities Act (1933 Act), the 1934 Securities Exchange Act, 15 U.S.C. § 78a et seq. and Rule 10b–5 thereunder 17 C.F.R. § 240.10b–5 (1976); (b) violations of sections of the Federal Trade Commission Act, 15 U.S.C. § 45; and (c) violations of the Federal Mail Fraud statute, 18 U.S.C. § 1341 et seq. and the Federal Lottery statutes, 18 U.S.C. § 1302 et seq. The district court *sua sponte* dismissed the complaint for lack of subject matter jurisdiction on the grounds that the referral sales agreement was not a security within the meaning of the federal Securities Acts, and that a private right of action could not be implied from either the Mail Fraud or the Lottery statutes.[1] This court reverses in part, vacates in part, and remands the case.

 The holding of the district court cannot be reconciled with the Supreme Court's decision in *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Federal subject matter jurisdiction exists if a complaint states a claim arising under the Constitution, laws or treaties of the United States even though, on the merits, the plaintiff has no federal right. Dismissal for lack of subject matter jurisdiction is only proper in the case of a frivolous or insubstantial claim, i. e., a claim which has no plausible foundation or which is clearly foreclosed by a prior Supreme Court decision. *Mobil Oil Co. v. Kelley,* 493 F.2d 784 (CA5), *cert. denied,* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974); *Mays v. Kirk,* 414 F.2d 131 (CA5, 1969); 13 C. Wright &

---

1. The district court also rejected plaintiffs' claim of a private right of action under the Federal Trade Commission Act, and the plaintiffs have not raised this point on appeal.

A. Miller, Federal Practice and Procedure, § 3564 at 427–28 (1975).

■ Although a colorable argument can be made that the appellants' claims under the Mail Fraud and Lottery laws are insubstantial,[2] plaintiffs' claims under the Securities Acts are not plainly insubstantial or frivolous on their face. The district court, therefore, should not have dismissed the complaint for lack of subject matter jurisdiction. However, if the district court is correct in asserting that the arrangement in this case is not a security and that there is no implied private right of action under the Federal Mail Fraud and Lottery statutes, then the plaintiffs' claims are subject to dismissal for failure to state a claim upon which relief could be granted. Therefore, in the interests of judicial economy we will discuss the substantive issues raised in the district court's opinion.

Both the appellants and the appellees recognize that the crucial case in determining whether a referral sales scheme is an investment contract, i. e., a security, is this court's decision in *S.E.C. v. Koscot Interplanetary, Inc.*, 497 F.2d 473 (CA5, 1974). In that case we held that the recruitment aspects of a pyramid sales scheme involving the sale of cosmetics distributorships were separable from the sale of cosmetics and that the former was an investment contract within the meaning of the Supreme Court's test in *S.E.C. v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).[3]

■ Appellants maintain that the arrangement they describe in their complaint, in its essentials, cannot be distinguished from the pyramid scheme declared to be a security in *Koscot*.[4] We agree except for one factor, discussed below, with respect to which additional fact finding is required.

The district court and the appellees attempt to distinguish *Koscot* on several grounds. Among these are: (a) the purchasers in *Koscot* were "investors" whereas the plaintiffs in the present case were merely purchasers; (b) the investors in *Koscot* were "sold" at public sales meetings whereas the vacuum cleaner purchasers were solicited in their own homes; and (c) a tangible product was sold in this case whereas intangibles were transferred in *Koscot*. We find these distinctions unpersuasive. All of these distinctions have no relevance to any of the elements of an investment contract enunciated in *Howey* and *Koscot*. Also, the district court could not properly make an *a priori* determination that plaintiffs were not "investors" before determining whether or not they were buying an investment contract. Finally, the mere transfer of a tangible commodity does not preclude the existence of a security. For example, in *S.E.C. v. Glenn Turner Enterprises*, 474 F.2d 476 (CA9), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973), the purchasers in the pyramid scheme received course materials such as cassettes and books. Yet, this did not prevent the recruitment aspects of the program from being held to be securities.[5]

2. *See Napper v. Anderson,* 500 F.2d 634 (CA5, 1974), *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975) (upholding dismissal of claim of private right of action under Wire Fraud Act for lack of subject matter jurisdiction).

3. As interpreted in *Koscot,* the *Howey* test for an investment contract has three elements:

 (a) an investment of money (*investment element*);

 (b) a *common enterprise* — "one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment of third parties;"

 (c) "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the success or failure of the enterprise." (the *crucial efforts* elements).
 497 F.2d at 477–80.

4. Commentators have noted a fundamental similarity between referral sales arrangements and pyramiding schemes. *E. g.,* Comment, Pyramid Marketing Plans and Consumer Protection: State and Federal Regulation, 21 J. of Public Law, 445, 450 (1972).

5. In numerous cases securities have been found to exist even though tangible products have been transferred, *e. g., S.E.C. v. Howey, supra,* (orange groves); *Miller v. Central Chinchilla Group, Inc.,* 494 F.2d 414 (CA8, 1974) (chinchillas); *Continental Marketing Corp. v. S.E.C.,* 387 F.2d 466 (CA10, 1967), *cert. denied,* 391 U.S. 905, 88 S.Ct. 1655, 20 L.Ed.2d 419 (1968)

Plaintiffs in this case claim that, in addition to a vacuum cleaner, they were buying an income opportunity, the right to supply names of other prospective "purchasers" for lucrative profits. As *Koscot* and *Glenn Turner Enterprises* teach, that income opportunity can be considered independently of any sale of a product or service which might have been made.

■ The appellees raise one significant legal distinction between the case at bar and *Koscot*. They claim that the alleged profit, i. e., the $10 referral fee, was not dependent upon the consummation of a sale. This fact can go to two elements of the *Howey* test. It could nullify the common enterprise element, or the significant efforts element, in the sense that it is possible that the production of income was dependent upon the efforts of the vendees. In this regard, the central inquiries are what were the significant efforts in producing the $10 fee and who made those efforts. The payment of the $10 fee was dependent upon a qualified customer's submitting to a sales demonstration. Thus, the significant effort in earning the fee was prompting the potential vendee to witness a demonstration, or, in other words, selling the sales demonstration and making the necessary appointment. If these efforts were made by the defendants, then, under *Koscot,* the arrangement would be a security. If the efforts were made by plaintiffs, then there would be no security involved and the action would be subject to dismissal. We cannot ascertain from the record before us who made these efforts. The question of who did the convincing and arranging is a question of fact which we leave to the trial court.

■ The court below relied on two state blue-sky law cases, *Pennsylvania Security*

Commission v. Consumers Research Consultants, Inc., 414 Pa. 253, 199 A.2d 428 (1964), and *Emery v. So-Soft of Ohio, Inc.,* 199 N.E.2d 120 (Ohio Ct.App.,1964), which held that referral sales schemes were not securities. Both cases are based on the assumption that *Howey* requires that the income be derived solely by the efforts of those other than the invester. We specifically rejected this assumption in *Koscot.* 497 F.2d at 480.[6]

■ Plaintiffs also claim that the consumer installment notes they gave appellees were securities within the meaning of the federal Securities Acts, citing *Davis v. Avco Corp.,* 371 F.Supp. 782 (N.D.Ohio, 1974), as authority for their position. As this court pointed out in *McClure v. First National Bank,* 497 F.2d 490, 494 (CA5, 1974), *cert. denied,* 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975), the notes in *Davis* were found to be securities because the makers obtained investment assets with them, i. e., "[the] notes [were] given for [a] loan to be used to buy into a pyramid distribution scheme with which [the] finance company was associated." It follows that any determination of whether the notes in question are securities will depend on whether the underlying arrangement is deemed to be a security.

■ Finally, plaintiffs maintain that they have a private right of action under the Federal Mail Fraud and Lottery statutes, 18 U.S.C. §§ 1302 et seq., 1341 et seq. We agree with the district court that our decision in *Napper v. Anderson,* 500 F.2d 634 (CA5, 1975), *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975), forecloses any such claim of a private right of action under these statutes.

(live beavers); *S.E.C. v. Brigadoon Scotch Dist. Ltd.,* 388 F.Supp. 1288 (S.D.N.Y.,1975) (rare coins).

6. The district court which we reversed in *Koscot* relied heavily on these two state cases. More significantly, two of the commentators cited with approval by us in *Koscot* viewed chain referral sales and pyramid schemes as being out of the same cloth and viewed the

aforementioned state cases as examples of mechanistic misapplication of *Howey.* Note, Securities Regulation of Pyramid Schemes, 51 Tex.L.Rev. 788, 794 (1973); Comment, Pyramid Marketing Plans and Consumer Protection: State and Federal Regulation, 21 J. of Public Law, 445, 450 (1972), cited at 497 F.2d at 483.

In summary, we affirm the dismissal of plaintiffs' claims which are based upon the Federal Mail Fraud and Lottery statutes. We vacate the dismissal of plaintiffs' claims based upon the federal Securities Acts and remand for further proceedings not inconsistent with this opinion.

AFFIRMED in part, VACATED in part, and REMANDED.